Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| REVERSE MORTGAGE SOLUTIONS, INC. Recurrida v. MANUEL SANTIAGO, ET AL. Peticionarios | KLCE202201123 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez Civil número: MZ2018CV00456 Sobre: Cobro de Dinero y Ejecución de Hipoteca |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio y el Juez Monge Gómez.[1]

Monge Gómez, Juez Ponente

### S E N T E N C I A

En San Juan, Puerto Rico, a 31 de enero de 2023.

Comparecen ante este Tribunal la parte peticionaria, Manuel Santiago López, Magda Cintrón Acosta y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, "Santiago-Cintrón" o los "Peticionarios") mediante recurso de *Certiorari* y nos solicitan la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el 5 de septiembre de 2022, notificada el 8 del mismo mes y año, mediante la cual denegó una solicitud de reconsideración de la *Resolución* de 12 de julio de 2022, notificada y archivada en autos el 14 de julio de 2022. Mediante esta última, se declaró No Ha Lugar la **"Solicitud de Vista Evidenciaria y Oposición a Solicitud de Anotación de Rebeldía"** y se le anotó la rebeldía a los Peticionarios.

Luego de examinar el expediente ante nuestra consideración y a la luz de los fundamentos que expondremos a continuación, se expide el recurso de *Certiorari* y se revoca la *Resolución* recurrida.

---

[1] Mediante Orden Administrativa OATA-2023-001 se designó al Hon. José Johel Monge Gómez en sustitución de la Hon. Olga E. Birriel Cardona para entender en los méritos de los recursos de epígrafe.

Número Identificador
SEN2023 _____

**I.**

El 21 de noviembre de 2018, Reverse Mortgage Solutions, Inc. (en adelante, "RMS" o la "Recurrida") presentó *Demanda* contra los Peticionarios sobre cobro de dinero y ejecución de hipoteca revertida, también conocido como *reverse mortgage*.

Luego de acreditar el diligenciamiento de los emplazamientos expedidos por el TPI a nombre de los Peticionarios, el 16 de mayo de 2019, la Recurrida presentó "**Moción Solicitando Sentencia en Rebeldía**". Sin someterse a la jurisdicción, el 28 de mayo de 2019, los Peticionarios presentaron "**Moción para Asumir Representación Legal y Prórroga para Presentar Defensas"**, mediante la cual solicitaron que se les concedieran dos (2) días para presentar defensas y solicitar los remedios que en derecho procedieran. Así las cosas, el 18 de junio de 2019, nuevamente sin someterse a la jurisdicción, los Peticionarios presentaron "**Moción de Desestimación bajo la Regla 10.2 y Otros Fundamentos**". En ella, se alegó –entre otras cosas– que la *Demanda* deja de exponer una reclamación que justificara la concesión de un remedio, ya que RMS no cumplió con el requisito de obtener la aprobación del Secretario del Departamento de la Vivienda y Desarrollo Urbano de los Estados Unidos (en adelante, "HUD"), requerida por la reglamentación federal antes de la presentación de la *Demanda*.[2] Igualmente, sostuvieron que el TPI no adquirió jurisdicción sobre sus personas, por insuficiencia en sus emplazamientos, en cuanto a la notificación del término para contestar la *Demanda*.

Así las cosas, el foro de instancia emitió *Resolución* el 8 de noviembre de 2019, notificada el mismo día, mediante la cual declaró Ha Lugar la moción asumiendo representación legal y concediendo la prórroga. En esa misma fecha, emitió *Orden* en la que le concedió diez (10) días a la Recurrida para que se expresara su posición en cuanto a la

---

[2] Véase, 12 USC sec. 1715z-20 y 24 CFR sec. 206.1.

moción de desestimación presentada el 18 de junio de 2019. El 13 de noviembre de 2019, RMS presentó su oposición y adujo que había cumplido con obtener la autorización requerida a través de un contratista autorizado por el HUD. Cabe destacar que, el 4 de diciembre de 2019, los Peticionarios solicitaron que la moción de desestimación presentada se considerara como una solicitud de sentencia sumaria y se señalara una vista argumentativa para discutir los méritos de su solicitud de desestimación. **Como consecuencia, el Tribunal de Primera Instancia emitió *Resolución* el 18 de diciembre de 2019, en la cual ordenó la paralización del caso hasta resolver las mociones**.

De conformidad con lo anterior, el foro primario emitió dos *Resoluciones* el 29 de enero de 2020, ambas notificadas el 13 de febrero de 2020. En la primera, denegó acoger la moción de desestimación como una solicitud de sentencia sumaria. Mientras que, en la segunda, declaró No Ha Lugar la solicitud de desestimación de Santiago-Cintrón. Entendió el foro recurrido que el hecho de que el término dispuesto en los emplazamientos diligenciados estuviera incorrecto, producía el efecto de tornarlos insuficientes. En lo relacionado al planteamiento sobre la autorización requerida por HUD, el tribunal de instancia entendió que debido a que la Recurrida presentó en su oposición una carta de autorización, tampoco procedía la desestimación del caso por dicho fundamento. **Por lo tanto, le concedió a los Peticionarios un término de veinte (20) días para contestar la Demanda**.

Insatisfecho, Santiago-Cintrón presentó "**Moción de Reconsideración y Solicitud de Determinaciones de hechos y Derecho Adicionales**" el 28 de febrero de 2020, en la que reiteró la omisión de RMS de no incluir los documentos que evidenciaran la notificación al HUD. Esta moción fue declarada No Ha Lugar mediante *Resolución* del 3 de marzo de 2020.

Por su parte, el 25 de marzo de 2020, RMS presentó "**Moción Solicitando Suspensión de los Procedimientos en Cumplimiento con**

**Regulaciones Federales**" basada en el estado de emergencia decretado por la pandemia del COVID-19. **El foro primario, mediante *Resolución* emitida el 20 de abril de 2020, notificada el 27 de mismo mes y año, concedió la paralización y mediante *Orden* de igual fecha indicó que la misma sería efectiva hasta el 18 de junio de 2020**.

Así las cosas, el 15 de julio de 2020, Santiago-Cintrón presentó un primer recurso de *Certiorari* ante esta Curia. Como consecuencia, el 19 de octubre de 2020, un panel hermano de este Tribunal emitió *Sentencia*, en el recurso con el alfanumérico KLCE2020000510.[3] Determinaron que le correspondía a la Recurrida alegar en su *Demanda* que contaba con la previa autorización del HUD para incoar la misma y que el haber presentado en la oposición a la desestimación una aprobación del *servicer* NOVAD Management Consulting, contratista autorizado por HUD, no satisfacía el requisito de haber obtenido la aprobación de HUD antes del comienzo de la *Demanda*. Por otra parte, establecieron que la legislación y reglamentación federal, además de la escritura de hipoteca revertida, requieren que se le conceda al deudor un término de treinta (30) días para subsanar cualquier violación a los términos y condiciones del préstamo, lo cual tampoco ocurrió en el presente caso.

Sobre el particular, el panel hermano expresó que, en la oposición a la moción de desestimación, RMS alegó haber enviado una carta que fue recogida el 30 de octubre de 2018 en San Juan, Puerto Rico. Sin embargo, Santiago-Cintrón alegó no recibir dicha misiva ya que la propiedad residencial hipotecada y donde residían ubica en el Municipio de Cabo Rojo. El Foro Apelativo sostuvo que, aunque se partiera de la premisa de que la carta, en efecto, había sido recibida, la *Demanda* fue presentada antes de que ello ocurriera. Incluso, fue presentada antes de que culminara el término de treinta (30) días que se le debe conceder a la parte deudora

---

[3] El 18 de diciembre de 2020, el Tribunal de Apelaciones notificó el Mandato de la mencionada *Sentencia*. El mismo fue recibido por el Tribunal de Primera Instancia el 23 de diciembre de 2020. *Véase*, Ap. de los Peticionarios, a la pág. 80.

para subsanar las faltas, conforme dispone la legislación y reglamentación federal.

Por lo tanto, y a tono con dichas expresiones, el panel hermano determinó que el foro de instancia debió concederle a los Peticionarios la oportunidad de refutar las alegaciones y los documentos presentados tardíamente por RMS. Igualmente, establecieron que los Peticionarios habían sido correctamente emplazados, por lo que se había adquirido jurisdicción sobre su persona. Siendo ello así, ordenó:

> […] al foro primario que acoja la solicitud de la parte peticionaria y permita la presentación de una solicitud de sentencia sumaria […] o, en su defecto, ordene la celebración de una vista evidenciaria en la que Reverse Mortgage acredite su cumplimiento con los requisitos exigidos por la ley y la reglamentación federales, así como por la escritura de hipoteca objeto de este pleito.[4]

El 18 de diciembre de 2020, el Tribunal de Apelaciones notificó el Mandato de la mencionada *Sentencia*. El mismo fue recibido por el Tribunal de Primera Instancia el 23 de diciembre de 2020. Sin embargo, el caso no tuvo movimiento por espacio de diez (10) meses, cuando la entonces abogada de la Recurrida presentó "**Moción Renunciando a la Representación Legal**" el 29 de octubre de 2021. El 4 de noviembre de 2021, el Tribunal de Primera Instancia emitió *Resolución*, en la cual ordenó a RMS a que: (1) anunciara su nueva representación legal en o antes del 22 de noviembre de 2021, (2) que, no más tarde del 1 de diciembre de 2021, notificara a los Peticionarios la prueba que tuvieren en su posesión que evidenciare el cumplimiento con la ley y reglamentación federal, y (3) que antes del 28 de diciembre de 2021 propusiera tres (3) fechas para la celebración de una vista evidenciaria. Sin embargo, estas *Órdenes* no fueron cumplidas por la Recurrida en las fechas establecidas por el TPI, sino que fue el 28 de diciembre de 2021, que RMS sometió moción en cumplimiento con lo ordenado.

---

[4] Véase Ap. de los Peticionarios, Ap. a las págs. 77-78.

Así las cosas, el foro recurrido emitió *Resolución* el 9 de enero de 2022, notificada el 14 de mismo mes y año, en la que les concedió un término de veinte (20) días a las partes para presentar el Informe para el Manejo del Caso. Ahora bien, en esa misma fecha, el foro primario emitió *Orden* mediante la cual sostuvo que se percataron que el Mandato del Tribunal de Apelaciones no había sido acatado. Por lo que, en sustitución de la *Resolución* antes indicada, autorizaron la presentación de la solicitud de sentencia sumaria por Santiago-Cintrón, concediendo veinte (20) días para su cumplimiento. Los Peticionarios solicitaron prórroga, la cual fue conocida hasta el 28 de febrero de 2022.[5]

**Pese a lo anterior, el tribunal de instancia emitió *Orden* el 22 de febrero de 2022, notificada el 25 de mismo mes y año, mediante la cual suspendió todo procedimiento ulterior hasta que RMS presentara fianza de no residente, al amparo de la Regla 69.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 69.5.**[6] **<u>Por tanto, lo anterior significó que el plazo concedido a los Peticionarios para presentar la moción de sentencia sumaria quedó igualmente suspendido</u>**. A tales efectos, y luego de cumplida dicha *Orden*, el foro recurrido emitió *Resolución* el 10 de junio de 2022, notificada el 14 de mismo mes y año, donde ordenó la continuación de los procedimientos y, nuevamente, concedió veinte (20) días a los Peticionarios para presentar la solicitud de sentencia sumaria. En la *Resolución*, se incluyó que dicho término vencía el 1 de julio de 2022.[7]

El 11 de julio de 2022, RMS presentó Moción Informativa mediante la cual solicitó la anotación de rebeldía en contra de los Peticionarios. El mismo día, Santiago-Cintrón presentó **"Solicitud de Vista Evidenciaria y Oposición a Solicitud de Anotación de Rebeldía"**. Amparada en el principio de economía procesal que dispone la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1, solicitó al tribunal de instancia que se les

---

[5] *Véase*, *Resolución* emitida el 14 de febrero de 2022, notificada el 16 de mismo mes y año, Ap. de los Peticionarios a la pág. 149.
[6] *Véase*, *Orden* emitida el 22 de febrero de 2022, notificada el 25 de mismo mes y año, Ap. de los Peticionarios a la pág. 150.
[7] *Véase*, *Resolución* emitida el 10 de junio de 2022, notificada el 14 de junio de 2022, Ap. de los Peticionarios a la pág. 154A.

relevara de presentar la solicitud de sentencia sumaria y que, en sustitución de ello, permitiera la celebración de una vista evidenciaria. Ello fundamentado en que, a juicio de los Peticionarios, tomaría más tiempo obtener una determinación final y firme bajo el mecanismo de sentencia sumaria. De hecho, sostuvieron que la prueba utilizada para resolver la sentencia sumaria de igual manera podría requerir la celebración de vista evidenciaria, por lo que era su intención evitar la duplicidad en el proceso.

En respuesta a ello, el foro primario emitió *Resolución* el 12 de julio de 2022, notificada el 14 de mismo mes y año, en la que declaró No Ha Lugar la petición de celebración de vista evidenciaria y les anotó a los Peticionarios la rebeldía solicitada por RMS. Concluyó que Santiago-Cintrón incumplió, "nuevamente", con las órdenes del Tribunal, ya que no presentó su solicitud de sentencia sumaria en el plazo concedido. Igualmente, añadió que los Peticionaros habían incumplido e ignorado *Órdenes* previas de dicho Foro, como la omisión de presentar la *Contestación a la Demanda*.

Por consiguiente, Santiago-Cintrón presentó moción de reconsideración el 29 de julio de 2022, a lo cual se opuso la Recurrida. El Tribunal de Primera Instancia declaró No Ha Lugar la moción de reconsideración el 5 de septiembre de 2022, notificada el 8 de septiembre de 2022. En síntesis, fundamentó su denegatoria en que los Peticionarios no cumplieron con la orden de presentar la solicitud de sentencia sumaria, luego de extendido el término inicial para ello. Así mismo, sostuvo que no habían contestado la *Demanda* luego de que el Tribunal de Apelaciones inicialmente concluyó que el emplazamiento fue diligenciado de manera correcta, por lo cual habían adquirido jurisdicción sobre su persona.

Inconforme con dicha determinación, los Peticionarios recurren ante nos mediante recurso de *Certiorari* y formulan el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia, Sala de Mayagüez, Hon. Maura Santiago Ducós, al anotarle la rebeldía a los codemandados aquí peticionarios a pesar de que los codemandados han sido muy activos defendiendo su

causa, no existía orden para contestar la demanda sino que más bien existían órdenes paralizando los procedimientos hasta que se resolviera la controversia de la moción dispositiva cónsono con el Mandato del Tribunal de Apelaciones en el caso KLCE202000510, lo cual no ha ocurrido, por lo que en este caso no concurre los criterios para anotarle la rebeldía.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Recurso de *Certiorari***

Es norma reiterada que el auto de *certiorari* es el vehículo procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Pueblo v. Colón Mendoza, 149 D.P.R. 630, 637 (1999). Así pues, distinto a los recursos de apelación, el tribunal apelativo tiene la facultad de expedir el auto de *certiorari* de manera discrecional. Es decir, descansa en la sana discreción del foro revisor el expedir o no el auto solicitado.

Todo recurso de *certiorari* presentado ante nos debe ser examinado primeramente bajo el palio de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, y luego evaluar los criterios que guían nuestra discreción para expedir el auto o denegarlo, conforme se dispone en la Regla 40 del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B, R.40. Dentro de los asuntos que establece la Regla 52.1 de Procedimiento Civil, *supra*, que podremos expedir se encuentra la anotación de rebeldía. 800 Ponce de León v. AIG, *supra*, pág. 175.

**B. Anotación de rebeldía**

Es obligación de toda parte contra la cual se presenta una demanda de notificar su contestación dentro de treinta (30) días de haber sido emplazado conforme a derecho. Regla 10.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 10. No obstante, la precitada Regla también establece que "[l]a notificación de una moción permitida por estas reglas o bajo la Regla 36, altera los términos arriba prescritos […], **a menos que por orden**

**del tribunal se fije un término distinto** […]". 32 L.P.R.A. Ap. V, R. 10.1 (énfasis nuestro).

A pesar de ello, las Reglas de Procedimiento Civil establecen que procede la anotación de rebeldía "[c]uando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo **haya dejado de presentar alegaciones** o de defenderse en otra forma, según se dispone en estas reglas". Regla 45.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 45.1. Este remedio puede ser utilizado tanto en las instancias mencionadas, como en aquéllas en que una de las partes en el pleito no ha cumplido con algún mandato del tribunal, que conlleva la obligación del foro judicial a imponerle la rebeldía como sanción. Ocasio v. Kelly Servs., 163 D.P.R. 653, 670 (2005). A pesar de ello, la anotación de rebeldía "como sanción por su incumplimiento con una orden del tribunal siempre se debe **dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción**". Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 590 (2011).

Se ha resuelto que la consecuencia jurídica de anotar la rebeldía a una parte en un pleito será tener como aceptadas cada una de las alegaciones bien formuladas que hubieran sido incluidas en la demanda. Vélez v. Boy Scouts of America, 145 D.P.R. 528, 534 (1998). Ahora bien, en el descargue de sus funciones, el Tribunal de Primera Instancia está en la obligación de comprobar cualquier aseveración esgrimida mediante la aportación de prueba que demuestra lo alegado. Hernández v. Espinosa, 145 D.P.R. 248, 272 (1998). "[S]i un tribunal necesita, para poder dictar sentencia en rebeldía, comprobar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas." Ocasio v. Kelly Servs., *supra*, pág. 671.

En armonía con lo anterior, nuestro Tribunal Supremo ha reiterado que en el ámbito de la adjudicación de un pleito en rebeldía los foros judiciales no pueden actuar como meros autómatas. Íd., págs. 671-672. Es

decir, "un trámite en rebeldía no garantiza per se, una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho". Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809, 817 (1978). Nótese que el objetivo de este mecanismo procesal no es conferirle una ventaja al demandante para obtener una sentencia a su favor, sino que lo que se persigue es estimular la tramitación ágil y efectiva de los pleitos ante los tribunales. J.R.T. v. Missy Mfg. Corp., 99 D.P.R. 805, 811 (1971).

Por este motivo, un tribunal, al momento de resolver una solicitud de anotación de rebeldía, debe interpretar la Regla 45 de Procedimiento Civil, *supra*, **de forma liberal, lo que significa que debe siempre resolver cualquier duda a favor de la parte que se opone a la concesión de la rebeldía. Esto es cónsono con la política judicial que prefiere que los casos se vean en sus méritos**. Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283, 293 (1988); Imp. Vilca, Inc v. Hogares Crea, Inc., 118 D.P.R. 679, 686 (1987).

La Regla 45.3 de Procedimiento Civil dispone la facultad para dejar sin efecto una anotación de rebeldía. 32 L.P.R.A. Ap. V, R. 45.3. La misma señala que "[e]l tribunal podrá dejar sin efecto una anotación de rebeldía **por causa justificada**, y cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2. Íd. Nuestro más Alto Foro ha reconocido que la parte que alegue causa justificada puede: (1) presentar evidencia de circunstancias que a juicio del tribunal demuestren justa causa para la dilación, o (2) **probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que se puede ocasionar a la otra parte con relación al proceso es razonablemente mínimo**. Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 593 (2011).

**III.**

En el presente caso, debemos revisar la anotación de rebeldía a los Peticionarios por un **primer y único incumplimiento** con una *Orden* emitida por el Tribunal de Primera Instancia.

Según se desprende de los hechos del caso, la *Demanda* fue presentada el 21 de noviembre de 2018 y los Peticionarios, sin someterse a la jurisdicción, el 18 de junio de 2019, presentaron la moción de desestimación, al amparo de la Regla 10.2 de Procedimiento Civil 32 L.P.R.A. Ap. V, R. 10.2. No fue hasta casi 5 meses más tarde, a saber, el 8 de noviembre de 2019, que el foro primario le concedió un término de diez (10) días a RMS para que se expresara sobre la moción de desestimación y así lo hizo oportunamente. No obstante lo anterior, el 4 de diciembre de 2019, Santiago-Cintrón solicitó al foro de instancia que acogieran dicha moción como una de sentencia sumaria.

El 18 de diciembre de 2019, el Tribunal de Primera Instancia optó por **ordenar la primera paralización** del caso, con el objetivo de resolver las mociones antes mencionadas. En consecuencia, emitió dos *Resoluciones* el 29 de enero de 2020, ambas notificadas el 13 de febrero de 2020. En ellas, denegó acoger la moción de desestimación como una de sentencia sumaria y declaró No Ha Lugar la moción de desestimación. **En vista de ello, le concedió por primera y única instancia a los Peticionarios un término de veinte (20) días para presentar la** *Contestación a la Demanda*.

Inconforme con las determinaciones del foro de instancia, Santiago-Cintrón presentó reconsideración el 28 de febrero de 2020, la cual fue declarada No Ha Lugar mediante *Resolución* emitida el 3 de marzo de 2020, notificada el 9 de marzo de 2020.

Antes de que venciera el término que tenían los Peticionarios para presentar *Contestación a la Demanda*, **RMS solicitó la suspensión de los procedimientos basado en el estado de emergencia suscitado a consecuencia de la pandemia del COVID-19, conforme las regulaciones federales. El tribunal de instancia concedió la**

**paralización hasta el 18 de junio de 2020, mediante *Orden* emitida el 20 de abril de 2020, notificada el 27 de mismo mes y año**. El expediente del TPI refleja que nada ocurrió entre que se solicitara la suspensión de los procedimientos y el decreto de paralización del foro recurrido. **Así pues, es evidente que dicha realidad resultó en la segunda paralización del caso de autos y, por consiguiente, la *Contestación a la Demanda* no podía ser presentada**.

Cabe destacar que, el 15 de julio de 2020, se presentó el primer recurso de *Certiorari* en el Tribunal de Apelaciones sobre la denegatoria de la solicitud de desestimación de la *Demanda*. De conformidad con lo esbozado anteriormente, un panel hermano de esta Curia revocó dicha determinación por lo que, en su Mandato, estableció el curso a seguir. Entiéndase, concederles a los Peticionarios un término para que presentaran la solicitud de sentencia sumaria o que se celebrara una vista evidenciaria para que la Recurrida pudiera evidenciar el cumplimiento de la notificación a Santiago-Cintrón y el haber adquirido la aprobación del HUD antes de presentada la *Demanda*.

Ahora bien, sabido es que la Regla 35(A)(1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 35(A)(1), establece que la presentación de un recurso de *certiorari* no suspende los procedimientos en primera instancia, salvo orden específica en contrario expedida por este Tribunal. Sin embargo, la controversia del caso obligaba a este Tribunal a entrar en los méritos de la moción de desestimación, toda vez que la Regla 52.1 de Procedimiento Civil, *supra*, no nos concede discreción para determinar si evaluar o no procedencia de la denegatoria de una moción dispositiva. Por consiguiente, hubiese sido irrazonable requerirle a los Peticionarios que presentaran su *Contestación a Demanda* cuando ello pudiera ser contrario al dictamen del panel hermano en el caso núm. KLCE2020000510, el cual, bien hubiera podido conllevar la terminación del caso en sus méritos.

Tan es así que, desde la presentación del recurso de *certiorari* ante este Tribunal, el caso no tuvo ningún movimiento ante el foro *a quo*. No fue sino hasta que el Mandato de este Tribunal fue recibido por el TPI el 23 de diciembre de 2020 que los autos del foro recurrido reflejan alguna entrada en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC). Así las cosas, y luego de once (11) meses de recibido el Mandato, el TPI emitió *Resolución* el 4 de noviembre de 2021, notificada el 9 del mismo mes y año. En ella, le requirió a RMS a cumplir con tres asuntos. El primero requería que anunciara su nueva representación, para lo cual tenía hasta el 22 de noviembre de 2021. En el segundo, se le concedió hasta el 1 de diciembre de 2021 para notificarle a Santiago-Cintrón la prueba que evidenciare el cumplimiento de la notificación a éstos. Por último, tenían hasta el 28 de diciembre de 2021 para proponer tres (3) fechas para la celebración de una vista evidenciaria.

La Recurrida presentó "**Moción en Cumplimiento de Orden**" el 28 de diciembre de 2021. Es decir, incumplió con la primera *Orden* por 36 días y la segunda orden por 27 días, luego del vencimiento al segundo plazo concedido por el TPI. A pesar de ello, RMS no fue sancionada. No obstante lo anterior, el foro de instancia emitió otra *Orden*, en la que reconoció que el Mandato todavía no había sido acatado y por tanto, le concedió a los Peticionarios un término de veinte (20) días para presentar la moción de sentencia sumaria. Posteriormente, los Peticionarios presentaron solicitud de prórroga que fue concedida mediante *Resolución* de 14 de febrero de 2022. **La referida prórroga fue concedida hasta el 28 de febrero de 2022**.

**El 22 de febrero de 2022, notificada el 25 del mismo mes y año, el TPI volvió a paralizar los procedimientos, debido a que se percató que la Recurrida no era residente de Puerto Rico y, por tanto, requirió la prestación de la fianza de no residente, al amparo de la Regla 69.5 de Procedimiento Civil,** *supra*. Presentada la fianza, el 14 de junio de 2022, el foro de instancia emitió *Resolución*, en la que dispuso lo siguiente:

"[…] Tiene la parte demandada un término de 20 días para presentar la Moción de Sentencia Sumaria que se le autorizó presentar, cuyo término vence el 1 de julio de 2022". Ahora bien, dicha *Resolución* fue notificada el 14 de junio de 2022, por tal razón, el término de veinte (20) días concluía el 4 de julio de 2022, que al ser un día feriado, debía presentarse el próximo día laborable, a saber: el 5 de julio de 2022.

Tomando en cuenta lo anterior, surge del recurso y de los autos del TPI que el 11 de julio de 2022, entiéndase, **seis (6) días** luego de vencido el término para presentar la solicitud de sentencia sumaria, RSM solicitó la anotación y sentencia en rebeldía contra los Peticionarios. **En igual fecha**, Santiago-Cintrón presentó "**Solicitud de Vista Evidenciaria y Oposición a Solicitud de Anotación en Rebeldía**". Sostuvieron que, por economía procesal, el debido proceso de ley y por los intereses de la justicia, sería más efectiva la celebración de una vista evidenciaria que la presentación de la solicitud de sentencia sumaria. Entendían los Peticionarios que una determinación a esos efectos en los casos de ejecución de hipoteca revertida podría demorar más de un año. Añadieron que la prueba a ser utilizada para resolver la solicitud de sentencia sumaria, igualmente, podría requerir una vista evidenciaria, lo cual los regresaría a dicha solicitud. Por último, insistieron en que la anotación de rebeldía procede en casos en que no surja la intención clara por parte de los Peticionarios de defenderse, lo cual es opuesto en el presente caso.

A pesar de lo anterior, el foro primario les anotó la rebeldía y mediante *Resolución* emitida el 12 de julio de 2022, notificada el 14 de mismo mes y año, erradamente hizo énfasis en que los Peticionarios habían incumplido e ignorado varias órdenes del tribunal en distintas ocasiones. En desacuerdo con dicho proceder, Santiago-Cintrón presentó "**Moción de Reconsideración de Anotación de Rebeldía**" el 29 de julio de 2022. Enfatizaron en que, salvo la última moción que no presentaron, estos "nunca han incumplido ninguna orden del Tribunal", por lo que "no *existe indiligencia* crasa ni *reiterados incumplimientos* como expresara este

Honorable Tribunal".[8] (énfasis en el original). Además, indicaron que éstos no están obligados a presentar la *Contestación a la Demanda*, toda vez que hay un asunto que pondría fin al pleito y ello no se había resuelto, a saber, la moción de desestimación. RMS presentó su oposición el 18 de agosto de 2022 y arguyó que a los Peticionarios no les interesaba cumplir con la orden del Tribunal. Consecuentemente, el TPI emitió *Resolución* del 5 de septiembre de 2022, notificada el 8 de mismo mes y año, en la que declaró No Ha Lugar la reconsideración.

Aunque nuestro ordenamiento jurídico establece que el tribunal puede anotar la rebeldía cuando una parte deja de cumplir una orden, nuestro Tribunal Supremo ha reconocido que esta sanción debe ser **justa y su ausencia equivaldría a un abuso de discreción**. Rivera Figuera v. Joe's European Shop, 183 DPR 580, 590 (2011) (énfasis nuestro). Como se desprende del recuento de hechos, la **primera y única** *Orden* que no cumplieron los Peticionarios fue presentar la moción en solicitud de sentencia sumaria. Nótese que el trámite ante el TPI se ha visto matizado por varias paralizaciones de los procedimientos y la presentación de recurso de *certiorari*, bajo el alfanumérico KLCE2020000510.

El examen del expediente de SUMAC refleja que el único incumplimiento material de los Peticionarios fue de tan solo seis (6) días, cuando solicitaron que se señalara una vista evidenciaria, pues entendían que ello propiciaba una adjudicación rápida en los méritos de la controversia relacionada con la autorización adecuada de HUD que debió obtener la Recurrida antes de incoar la *Demanda* en el presente caso. Notamos que dicha solicitud, si bien no se ajustaba a lo ordenado por el Tribunal, no era irrazonable. Los Peticionarios lo único que buscaban era una solución justa, rápida y económica. Ello, lejos de constituir desidia o dejadez, se atempera a la máxima que rige en todos los procedimientos que se conducen ante los tribunales del País. Si a ello se le suma el hecho

---

[8] *Véase*, "Moción de Reconsideración de Anotación de Rebeldía", Ap. de los Peticionarios, Ap. pág. 173-182.

de que RMS no sufrió ninguna consecuencia a raíz de sus propios incumplimientos, entendemos que la anotación de la rebeldía en contra de los Peticionarios no fue justa ni razonable.

Conforme hemos adelantado, las Reglas de Procedimiento Civil proveen para dejar sin efecto una anotación de rebeldía. Regla 45.3 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 45.3. Para ello, se requiere causa justificada y que quien lo alegue debe así evidenciarlo. En el presente caso, los Peticionarios indicaron que, luego de evaluados los documentos entregados por RMS, fundamentándose en la economía procesal, preferían proceder con la celebración de una vista evidenciaria, de ello ser aceptado por el foro primario.

El foro de instancia no estaba obligado a acoger la petición de Santiago-Cintrón, mas no debió imponer una sanción tan severa como lo es la anotación de la rebeldía ante un primer y único incumplimiento a solo seis (6) días de vencido el plazo concedido.

Independientemente de lo anterior, el foro de instancia también mencionó en sus *Resoluciones* de 12 de julio de 2022 y de 5 de septiembre de 2022, el incumplimiento por los Peticionarios al no presentar su *Contestación a la Demanda*. Reconocemos que, en estricto derecho, las Reglas de Procedimiento Civil establecen que procede la anotación de rebeldía "[c]uando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones **o de defenderse en otra forma**, según se dispone en estas reglas". Regla 45.1 de Procedimiento Civil, *supra* (énfasis suplido). Ahora bien, Santiago-Cintrón presentó una moción de desestimación, fundamentándose en se deja de exponer una reclamación que justifique la concesión de un remedio, la cual, al momento, no ha sido completamente adjudicada en los méritos. Surge del expediente que el panel hermano en su *Sentencia* ordenó al foro de instancia a permitir la presentación de la solicitud de sentencia sumaria o que celebrara una vista evidenciaria para que la Recurrida pudiera probar el cumplimiento o no con la legislación y reglamentación federal.

Ciertamente, de una lectura de la *Resolución* recurrida, podemos inferir que el Tribunal de Primera Instancia pudo haberle imputado los incumplimientos desplegados por la parte Recurrida durante el proceso a los Peticionarios. Por tal razón, erró el foro de instancia al expresar en su última *Resolución* que la oposición a la anotación a la rebeldía, sin haber contestado la *Demanda* ni haber cumplido con la orden del Mandato constituyó "una comparecencia en abierto desafío a la orden de este Tribunal y al Mandato del Tribunal de Apelaciones, así como en menosprecio de las Reglas Procesales". Primeramente, a los Peticionarios se les requirió en una sola ocasión la presentación de la *Contestación a la Demanda*, mediante la Resolución del TPI denegando la solicitud de desestimación que presentó como su alegación responsiva a principios del pleito. Sin embargo, dicho dictamen quedó suspendido por virtud de los trámites apelativos y del Mandato del panel hermano, cuando le requirió al foro recurrido a conceder un término a los Peticionarios para oponerse a lo alegado por la Recurrida en su moción en oposición a la desestimación o a celebrar una vista evidenciaria.

Es decir, era improcedente requerirle a los Peticionarios que contestaran la *Demanda*, cuando aún existe una controversia sobre jurisdicción sobre la materia del foro *a quo*. Argumentar lo contrario, sería ir en contra del principio de economía procesal que permea en nuestro ordenamiento jurídico. Asimismo, no puede pasar desapercibido el hecho de que el incumplimiento que provocó que se le anotara la rebeldía a los Peticionarios fue por haber comparecido a seis (6) días de vencido el plazo concedido por el TPI; más aún si lo comparamos con los incumplimientos desplegados por la Recurrida de más de veinticinco (25) días. Tan severa sanción no es procedente en el caso, sobre todo cuando existe una defensa invocada por los Peticionarios desde el principio del litigio.

**IV.**

Por las consideraciones que anteceden, expedimos el auto de *Certiorari* que nos ocupa y revocamos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, mediante la cual se le anotó la rebeldía a los Peticionarios. Se le ordena a estos últimos a presentar la moción de sentencia sumaria ordenada por el panel hermano de este Tribunal en el término de veinte (20) días de recibido el correspondiente mandato.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones