Junta de Relaciones del Trabajo de Puerto Rico, peticionaria, *v.* Missy Manufacturing Corporation, demandada.

*Número:* O-70-9          *Resuelto:* 31 de marzo de 1971

*Gilberto Gierbolini Ortiz, Procurador General, Miguel A. Rivera Arroyo, Celia Canales de González* y *José E. Rodríguez Rosaly,* abogados de la peticionaria; *Goldman, Antonetti & Subirá, Rafael F. Morales Cabranes* y *David F. Barreto,* abogados de la demandada.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

No podemos acceder a la solicitud de la Junta de Relaciones del Trabajo de poner en vigor la orden dictada en rebeldía contra la querellada Missy Manufacturing Corporation por estar plenamente convencidos de que la Junta se excedió en el ejercicio de su discreción al negar a la querellada la reapertura del caso y al no concederle una vista en los méritos. La orden en cuestión obliga a la querellada a reponer en su antiguo empleo o a uno sustancialmente igual a Nancy La Aurora Nater y a compensarla por los ingresos dejados de percibir por razón de las actuaciones de la querellada en su contra.

A continuación los hechos que sostienen nuestra conclusión.

El 9 de julio de 1969 la Junta expidió sendas querellas contra Missy Manufacturing Corporation y la International Ladies Garment Workers Union, AFL-CIO, Local 600, ILGWU,

alegando como práctica ilícita del trabajo el despido sin justa causa de la empleada Nancy La Aurora Nater en violación del convenio colectivo. Ambas querellas fueron consolidadas a los fines de vista y decisión, señalándose la vista para el 23 de julio de 1969.

Ni el patrono ni la Unión contestaron las querellas. Cinco días antes de la vista un funcionario de la Unión solicitó, mediante telegrama al Presidente de la Junta, una prórroga de 10 días para contestar la querella en su contra y un nuevo señalamiento de la vista por encontrarse el abogado de la Unión fuera de Puerto Rico. El día de la vista compareció un empleado de la Unión a reproducir la solicitud de prórroga y posposición. El patrono no compareció. El Oficial Examinador accedió a la solicitud de la Unión, concediéndole hasta el 4 de agosto para contestar la querella y haciendo un nuevo señalamiento para el 2 de septiembre. Sin embargo, a instancia del abogado de la Junta, el Oficial Examinador dio por admitidas las alegaciones de la querella contra el patrono, y, ese mismo día declaró con lugar la querella contra éste, recomendando, en consecuencia, la orden objeto de este procedimiento.

Al notificársele al patrono el Informe del Oficial Examinador, compareció ante la Junta solicitando la reapertura del caso. En su moción expuso que por causa de confusión sobre el tipo de procedimiento pendiente no había concurrido a la vista. Alegó, además, hechos que, en esencia, constituían una contestación a la querella. [1]

---

[1] En la moción de reapertura expuso entre otras cosas:

"5. La querellante en este caso abandonó su trabajo voluntariamente al negarse a cambiar temporeramente de operación en su trabajo, lo cual era urgentemente necesario para la compañía, y a pesar de que se le garantizaba su sueldo promedio en la operación anterior.

"6. En ningún momento la querellante solicitó permiso para ausentarse del trabajo por las razones alegadas en la querella.

"7. Lo anterior es confirmado por la Contestación de la unión querellada en el caso CA-3999, fechada el 4 de agosto de 1969.

"8. La querellada Missy Manufacturing Corporation niega absoluta-

La Junta denegó sin vista la reapertura. En 18 de agosto solicitó el patrono la reconsideración, proponiendo que la vista de su querella se celebrara conjuntamente con la señalada para el 2 de septiembre en el caso contra la Unión, ya que los hechos en ambos casos eran casi los mismos. Específicamente expuso en su moción de reconsideración que:

"5. Los hechos ciertos y reales de este caso son los siguientes:

La compañía trabaja a base de operaciones en serie. Una operación depende de la anterior. En la operación de la querellante había muchísimo trabajo terminado. Sin embargo, en la operación siguiente no había suficientes operarias para mantenerse al ritmo de la operación anterior.

La supervisora inmediata de la querellante le pidió que se moviera a la operación siguiente, operación en la cual ella también era eficiente. La querellante se negó rotundamente a hacer dicho cambio, a pesar de que se le aseguró enfáticamente que se le garantizaría el sueldo promedio en su trabajo regular.

Entonces la querellante se trasladó a la oficina del gerente, quien a la sazón se encontraba reunido con la delegada de la Unión en la planta y con la agente de negocios de la Unión.

La querellante insistió en su posición, a pesar de las advertencias de las oficiales de la Unión antes dichas, y abandonó su empleo voluntariamente.

En ningún momento mencionó la querellante cita médica o problema de salud alguno.

La propia Unión representante de la querellada reconoce que ésta 'abandonó su empleo' y que 'se colocó en una posición indefendible'.

6. La compañía tiene conocimiento de que un representante de la Unión compareció a la audiencia y solicitó una prórroga para contestar la querella. Dicha solicitud se declaró con lugar por el Oficial Examinador, señalándose la continuación de la audiencia para el día 2 de septiembre de 1969."

La Junta también declaró no ha lugar de plano la moción de reconsideración. Así las cosas, el 29 de agosto el patrono

_____

mente que haya despedido o suspendido a la querellante, y por el contrario, reitera que la misma abandonó su trabajo por su propia voluntad y criterio."

presentó un escrito titulado Exposición de Excepciones argumentando la justicia de su solicitud de reapertura y el 8 de septiembre presentó una segunda moción de reconsideración señalando que la vista del caso contra la Unión señalado para el 2 de septiembre se había suspendido a petición del abogado de la Junta y se había vuelto a señalar para el 24 de septiembre; que siendo la prueba casi idéntica, el señalar una audiencia conjunta en ambos casos no causaría problema alguno a ninguna de las partes.

El 11 de septiembre la Junta declaró sin lugar la segunda moción de reconsideración anotando que la querellante Nancy La Aurora Nater había retirado los cargos contra la Unión y que *"De no haberse retirado dicho caso y en vista de que el querellado reclama que se trata casi de la misma prueba, la Junta se había inclinado a permitirle comparecer a practicar la suya; pero no existe ninguna otra justificación fuera de esa circunstancia."* (Énfasis nuestro.)

Al así actuar, la Junta incurrió en un claro abuso de discreción. La Junta de Relaciones del Trabajo, al igual que cualquier organismo investido de poderes públicos, viene obligada en el ejercicio de su discreción no sólo por el estatuto de su creación sino por normas fundamentales de trato justo.

Como hemos visto, se trata de una simple moción de reapertura de rebeldía solicitada por la querellada oportunamente, aduciéndose en la misma una buena defensa contra la querella, y en la cual por las circunstancias del caso, el concederla no ocasionaba perjuicio alguno.

La solicitud de reapertura fue presentada por la querellada Missy Manufacturing Corporation el 8 de agosto de 1969, apenas 10 días desde que se le envió por correo el Informe del Oficial Examinador dando por admitidas las alegaciones de la querella por falta de contestación. En dicha solicitud se alegaron hechos que constituían una contestación a la querella, aduciéndose como defensa que la quere-

llante había abandonado el trabajo voluntariamente, sin solicitar permiso a la querellada, todo lo cual fue confirmado por la contestación de la propia Unión, International Ladies Garment Workers, AFL-CIO, Local 600, ILGWU.

La querella contra la Unión fue consolidada para fines de vista y decisión con la querella contra el patrono, la cual fue transferida en dos ocasiones. Mientras por un lado se le concedió tiempo adicional a la Unión para contestar, por otro lado, se le denegó la reapertura de la rebeldía al patrono cuando todavía no se había celebrado la vista contra la Unión, siendo la prueba en ambas querellas más o menos la misma.

■ Ante esta situación de hechos no cabe justificar la actuación de la Junta a base de la necesidad de tramitar la querella sin demoras indebidas. No está sujeto a discusión la deseabilidad de promover la tramitación diligente de las querellas ante la Junta. Es evidente que las demoras innecesarias son indeseables tanto para el obrero, que deja de percibir su salario durante la cesantía, como para el patrono, que finalmente puede verse obligado a pagarle retroactivamente. Fue con el propósito de promover el trámite diligente de las querellas ante la Junta que se adoptó la Sec. 2 del Art. II del Reglamento de la Junta, 29 R.&R.P.R. sec. 64–3, que autoriza a dar por admitidas cualquier alegación en una querella no negada por la contestación.[2] Es éste un pro-

---

[2] La Sec. 2 del Art. II del Reglamento de la Junta lee en lo pertinente:

"Cualquier alegación en la querella . . . no negada por la contestación se considerará admitida por el querellado y la Junta subsiguientemente podrá hacer conclusiones de hecho y de ley basadas en tal admisión. A solicitud del querellado el Presidente de la Junta podrá ampliar el término para la radicación de la contestación."

Aunque esta disposición se aplica, de acuerdo con sus propios términos a los casos en que haya una contestación, asumimos que también es aplicable a los casos en que no haya habido contestación alguna, como en el de autos.

pósito idéntico al de la Regla 45 de Procedimiento Civil, que autoriza la anotación de rebeldía cuando una parte haya dejado de presentar alegaciones o de defenderse.

■ El objeto de estas disposiciones procesales no es conferir una ventaja a los demandantes o querellantes para obtener una sentencia sin una vista en los méritos. Son normas procesales en beneficio de una buena administración de la función adjudicativa, dirigidas a estimular la tramitación diligente de los casos. *Díaz* v. *Tribunal Superior*, 93 D.P.R. 79, 87 (1966). Por eso, y por lo oneroso y drástico que resulta sobre las partes demandadas o querelladas una sentencia en rebeldía, es que se ha establecido la norma de interpretación liberal, debiendo resolverse cualquier duda a favor del que solicita que se deje sin efecto la anotación de rebeldía, a fin de que el caso pueda verse en los méritos. *Díaz* v. *Tribunal Superior*, supra.

■ Cuando, como en este caso, se aduce una buena defensa y la reapertura no ocasiona perjuicio alguno, constituye un claro abuso de discreción el denegarla. Como regla general, una buena defensa debe siempre inclinar la balanza a favor de una vista en los méritos, a menos que las circunstancias del caso sean de tal naturaleza que revelen un ánimo contumaz o temerario por parte del querellado. Con más razón, cuando el trámite del caso demuestra que la reapertura no ocasiona perjuicio alguno. *Sociedad de Gananciales* v. *Tribunal Superior*, 85 D.P.R. 892 (1962); *Latoni* v. *Tribunal de Expropiaciones*, 71 D.P.R. 413 (1950); cf. *Southern Construction Co.* v. *Tribunal Superior*, 87 D.P.R. 913 (1963). Son normas justas y razonables que se han formulado en bien de la justicia para atenuar los rigores del trámite judicial al derecho fundamental de su día en corte. Por su justicia inmanente deben ser y son de aplicación insoslayable tanto a los procedimientos ante el tribunal como a los procedimien-

tos de adjudicación administrativa. *Cf. Martínez v. Tribunal Superior*, 83 D.P.R. 717 (1961).[3]

█ Habiendo incurrido la Junta de Relaciones del Trabajo en un abuso de discreción al denegarle a la querellada la reapertura del caso y no celebrar una vista en los méritos, *procede dejar sin efecto la orden dictada contra la querellada Missy Manufacturing Corporation el 16 de septiembre de 1969. Se devolverá el caso para procedimientos ulteriores consistentes con lo aquí expuesto.*

---

[3] En *Martínez v. Tribunal Superior*, resolvimos que los principios que informan las disposiciones de la anterior Regla 60(a) de Enjuiciamiento Civil y la Regla 49.1 de Procedimiento Civil de 1958, son de aplicación a los organismos administrativos del Estado Libre Asociado, reconociendo que los organismos administrativos han sido creados especialmente con el propósito de que funcionen sin la inflexibilidad que generalmente caracteriza a los tribunales.