Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Recurrida<br><br>v.<br><br>CARLOS JUAN RODRÍGUEZ MATEO<br><br>Recurrente | KLRA202400566 | Revisión procedente de la Oficina de Ética Gubernamental<br><br>Caso núm.: 23-52<br><br>Sobre: Violación al Artículo 4.2, inciso (h), de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012, según enmendada |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

Por la vía sumaria, y luego de anotarle la rebeldía al querellado, la Oficina de Ética Gubernamental ("OEG") le impuso una multa a un funcionario por intervenir en la contratación de su prima. Según explicamos a continuación, procede la confirmación de la determinación de la OEG, pues la anotación de rebeldía se justificaba ante el reiterado incumplimiento del recurrente con las órdenes de la OEG y este no esgrimió una defensa viable en derecho en cuanto a los méritos de lo imputado por la OEG.

I.

El 25 de abril de 2023, la OEG presentó una *Querella* (la "Querella") en contra del Sr. Carlos J. Rodríguez Mateo (el

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, **este recurso, así como todo recurso futuro que surja del caso de referencia será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202300889) (KLRA202400159)**.

"Recurrente"). Se le imputó una infracción al Artículo 4.2(h) de la Ley 1-2012 ("Ley 1"), según enmendada, 3 LPRA sec. 1857a(h).

En síntesis, se le atribuyó al Recurrente que, mientras se desempeñaba como administrador de la Administración de Servicios de Salud Mental y Contra la Adicción ("ASSMCA" o la "Agencia"), intervino en la otorgación de cuatro (4) contratos por servicios profesionales con su prima hermana, la Sa. Naomi Cristal Rodríguez Colón (la "Prima"), ello sin solicitar autorización de la OEG. Los contratos son los siguientes:

1. Contrato de Servicios Profesionales y Consultivos, núm. 2021-952610, el 10 de junio de 2021, vigente desde su firma hasta el 14 de marzo de 2022, por la suma de $18.00 la hora hasta un máximo de $2,160.00 mensuales, por concepto de servicios prestados como especialista de servicios administrativos en la oficina de contabilidad, nivel central.

2. Contrato de Servicios Profesionales y Consultivos, núm. 2022-951584, el 15 de diciembre de 2021, vigente desde su firma hasta el 30 de septiembre de 2022, por la suma de $18.00 la hora hasta un máximo de $2,700.00 mensuales, por concepto de servicios prestados como Asistente de Recreo deportivo en el Proyecto CARE de la División de Niños, Jóvenes y sus Familias, Región de Guayama.

3. Contrato de Servicios Profesionales y Consultivos núm. 2022-952474, el 6 de mayo de 2022, vigente hasta el 30 de septiembre de 2022, por la suma de $25.00 por hora hasta un máximo de $3,750.00 mensuales, por concepto de servicios prestados como Enlace de Alcance Comunitario en el proyecto CARE de la División de Niños, Jóvenes y sus Familias, Región de Guayama.

4. Contrato de Servicios Profesionales y Consultivos, núm. 223-951472, el 1 de octubre de 2022, vigente desde su firma hasta el 30 de septiembre de 2023, por la suma de $25.00 por hora hasta un máximo de $3,750 mensuales, por concepto de prestación de servicios como Enlace de Alcance Comunitario en el proyecto CARE de la División de Niños, Jóvenes y sus Familias, Región de Guayama.[2]

El 10 de mayo de 2023, el Recurrente contestó la *Querella*. Afirmó que entre su prima y él "no existe una relación de

---

[2] Véanse, *Querella*, Apéndice XXXIV del *Alegato en Oposición*, págs. 209-210; Anejos 4-8 de la *Moción Solicitando Adjudicación Sumaria*, Apéndice XV del *Alegato en Oposición*, págs. 98-148.

familiaridad desde su nacimiento ni con su familia" y que él "desconocía que [ella] era contratista" en la Agencia. Alegó que él "no entrevista personas ni contratistas y [que] esa gestión recae en personal de contrataciones y finanzas que someten los contratos para ser firmados por el querellado". Sostuvo que no tuvo "intención específica de violar las disposiciones legales de la OEG".

La oficial examinadora asignada a la Querella (la "Examinadora") le concedió a las partes hasta el 10 de julio de 2023 para finalizar el descubrimiento de prueba.

El 19 de mayo, la OEG le cursó al Recurrente un *Primer Pliego de Interrogatorio, Requerimiento de Admisiones y Producción de Documentos* (el "Descubrimiento"). En respuesta, el 26 de mayo, el Recurrente interpuso una *Moción Objetando Descubrimiento de Prueba.* Sostuvo que la OEG pretendía violar el principio constitucional a la no autoincriminación. Añadió que la OEG tenía que demostrar su caso con prueba clara, robusta y convincente, pero sin utilizar para ello evidencia de la defensa del Recurrente o un requerimiento de admisiones. Concluyó que la OEG no había establecido que el Recurrente "influenció" en la contratación de su prima y que los contratos sometidos no demuestran, según el *quantum* de prueba requerido, la procedencia de la imposición de una multa.

El 9 de junio, la OEG replicó; sostuvo que la Sección 3.8(a) de la Ley 38-2017, según enmendada ("LPAU"), 3 LPRA sec. 9648, autoriza a las agencias a establecer mecanismos de descubrimiento de prueba en sus reglamentos de procedimiento adjudicativo. Explicó que, en el caso de la OEG, el Artículo 6.8 del Reglamento Núm. 8231 de 18 de julio de 2012 (*Reglamento sobre Asunto Programáticos de la Oficina de Ética Gubernamental,* o el "Reglamento") dispone que las partes pueden usar los mecanismos

de descubrimiento de prueba establecidos en las Reglas de Procedimiento Civil.

La OEG también arguyó que la objeción del Recurrente era una generalizada, que este no era investigado criminalmente ni enfrentaba una consecuencia de carácter penal, por lo cual no procedía esgrimir el derecho contra la autoincriminación. Particularmente, explicó que el Art.4.2(h) de la Ley 1, *supra*, y la conducta que se le atribuye al Recurrente no tienen implicaciones penales. Por último, indicó que el uso de los mecanismos de descubrimiento de prueba propende a delimitar y simplificar los asuntos en controversia y que tenía evidencia independiente y suficiente para demostrar su caso.

El 27 de junio, el Recurrente presentó una *Moción Solicitando Desestimación*. Alegó que la evidencia de los contratos presentados por la agencia no eran prueba "clara robusta y convincente" de la infracción imputada. Insistió en que le correspondía a la Agencia demostrar su caso sin que él tuviese que responder al Descubrimiento. Arguyó que la OEG no había demostrado que hubiese influenciado en la contratación de su prima.

El 30 de junio, la OEG se opuso a la solicitud de desestimación del Recurrente; señaló que no procedía una desestimación por insuficiencia de la prueba cuando ni siquiera había culminado el procedimiento de descubrimiento de prueba.

El 10 de julio, la Examinadora denegó la moción de desestimación y rechazó la objeción al descubrimiento de prueba formulada por el Recurrente. La Examinadora consignó que el Recurrente podía objetar aquellas preguntas o requerimientos específicos cuya contestación él entendiese pudiesen incriminarlo penalmente. Razonó que era improcedente la objeción general a todo el Descubrimiento. Además, concluyó que el Recurrente no demostró que la información solicitada fuera privilegiada. En

cuanto al argumento del Recurrente en torno a la insuficiencia de prueba, determinó que se trataba de un planteamiento prematuro por la etapa en la que se encontraba el caso. La Examinadora ordenó la continuación de los procedimientos y **le concedió al Recurrente un término final de veinte (20) días para contestar el Descubrimiento**.

Subsecuentemente, el 18 de julio, la Examinadora emitió una *Orden* en la que señaló la conferencia con antelación a audiencia para el 12 de septiembre. Además, le concedió a las partes hasta el 5 de septiembre para presentar el informe de conferencia.

El 10 de agosto, el Recurrente presentó un recurso denominado *certiorari* ante este Tribunal (KLCE202300889). El 14 de agosto, dictamos una *Resolución* en la que desestimamos dicho recurso por falta de jurisdicción.

Mientras tanto, vencido el plazo para que el Recurrente presentara su contestación al Descubrimiento, el 11 de agosto, la OEG incoó una *Moción Informativa y en Solicitud de Orden.*

El 14 de agosto, el Recurrente solicitó la paralización de los procedimientos ante la OEG.

El 15 de agosto, la Examinadora, mediante una *Orden,* denegó la solicitud de paralización del Recurrente. Además, **le concedió un término final de veinte (20) días para cumplir con la orden del 10 de julio**. La Examinadora le apercibió que, de no cumplir con lo ordenado, se le impondría una sanción económica de $100.00.

El 12 de septiembre, día del señalamiento de conferencia con antelación a la audiencia, **ni el Recurrente ni su representante legal comparecieron**. Tampoco se excusaron o mostraron justa causa para su incomparecencia.

Así pues, el Recurrente no contestó el Descubrimiento dentro de los plazos concedidos, no presentó el informe de conferencia según ordenado, y tampoco compareció a la vista señalada.

El mismo 12 de septiembre, la Examinadora, mediante una *Orden*, le requirió al Recurrente mostrar causa por la cual no se le debían imponer sanciones económicas por su incomparecencia a la conferencia con antelación y por su reiterado incumplimiento con las órdenes previas. Además, reseñaló la conferencia con antelación para el 8 de diciembre y concedió hasta el 1 de diciembre para someter el correspondiente informe.

Por su parte, el 15 de septiembre, el Recurrente instó un recurso de *certiorari* ante el Tribunal Supremo de Puerto Rico (CC-2023-614), acompañado de una solicitud de paralización de los procedimientos. El 23 de octubre, el Tribunal Supremo denegó la expedición del auto de *certiorari* solicitado por el Recurrente. Subsiguientemente, el Tribunal Supremo denegó dos (2) reconsideraciones instadas por el Recurrente.

Mientras tanto, el 10 de octubre, la OEG incoó una *Moción Informativa y Solicitud de Sanción Económica por Incumplimiento Procesal*. Informó que **el Recurrente no mostró causa por la cual no se le debía sancionar** y advirtió que el Recurrente aún no había contestado el Descubrimiento.

El 23 de octubre, la Examinadora le impuso al representante legal del Recurrente una sanción económica de $100.00. Además, una vez más, **le ordenó al Recurrente, en un término de 20 días, notificar su contestación al Descubrimiento y mostrar causa por la cual no debía anotársele la rebeldía**.

El 28 de noviembre, la OEG instó una *Moción Informativa* en la que comunicó que el Recurrente no había contestado el Descubrimiento y que ello le impedía presentar el informe de conferencia con antelación.

El 12 de diciembre, la Examinadora, mediante una *Orden,* le anotó la rebeldía al Recurrente. Determinó que, a raíz de ello, se daban por admitidos los hechos debidamente alegados en la Querella y los requerimientos de admisiones cursados al Recurrente. Además, se ordenó la continuación de los procedimientos y se le impuso una sanción adicional de $100.00 al representante legal del Recurrente.

El 12 de enero de 2024, la OEG interpuso una *Moción Solicitando Adjudicación Sumaria* (la "Moción"), la cual acompañó con varios anejos. En síntesis, sostuvo que no existía controversia de hechos esenciales que impidiera disponer del caso por la vía sumaria. Planteó que la controversia de derecho se circunscribe a determinar si el Recurrente, como autoridad nominadora, podía intervenir en la contratación de su prima por la Agencia.

El 23 de enero, la Examinadora acogió la Moción como una solicitud de sentencia en rebeldía. Consignó que había transcurrido el término reglamentario desde la anotación de rebeldía sin que el Recurrente se opusiera a dicha anotación o solicitara algún remedio, por lo cual dio el caso por sometido. Destacó que la anotación de rebeldía tuvo el efecto de dar por admitidos los hechos alegados correctamente en la *Querella* y le impedía al Recurrente presentar prueba a su favor, aunque con ello no se eximía al foro adjudicador de evaluar si la causa de acción instada amerita la concesión del remedio solicitado. Indicó que el Recurrente tenía derecho a presentar defensas como la falta de jurisdicción o la ausencia de hechos constitutivos de una causa de acción. No obstante, planteó que se entendía que renunció a su derecho a presentar prueba contra las alegaciones de la Querella y a levantar defensas afirmativas.

Ese mismo día, el Recurrente presentó una *Moción en Réplica.* Señaló que estaba pendiente de resolución ante el Tribunal

Supremo una segunda moción de reconsideración con el planteamiento en torno a la no autoincriminación. Añadió que la prueba presentada por la OEG únicamente reflejaba el hecho del parentesco y que no había prueba clara, robusta y convincente de que el Recurrente sabía que la persona contratada era su prima. Además, adujo que la OEG pretendía privarlo de poder contrainterrogar a los testigos, confrontar la prueba sometida y sentarse a declarar.

Por su parte, el 2 de febrero, la OEG instó una *Réplica a Moción en Réplica*. Arguyó que, contrario a lo planteado por el Recurrente, el elemento de intención no es requerido para que se configure una violación al Artículo 4.2(h) de la Ley 1, *supra*, por lo que no tenía pertinencia si el Recurrente tuvo "intención" ni tampoco si sabía que la Prima era su prima. Explicó que la acción penal que se desprende del Artículo 4.7(a) de la Ley 1, 3 LPRA sec. 1857f(a), excluye el inciso (h) del Artículo 4.2. Planteó que el asunto medular era determinar si el Recurrente había intervenido, como autoridad nominadora de la Agencia, en la contratación de un pariente contemplado por la ley, sin previa autorización de la OEG para ello. Añadió que el Recurrente no había controvertido los hechos medulares y pertinentes que se presentaron en la Moción. Señaló que la anotación de rebeldía obedeció al reiterado incumplimiento del Recurrente con las órdenes emitidas. La OEG aseveró que el Recurrente tuvo la oportunidad de defenderse, pero se cruzó de brazos, ignorando el trámite administrativo simplemente porque había presentado recursos a este Tribunal y al Tribunal Supremo, a pesar de que sabía que la presentación de dichos recursos, de por sí, no habían paralizado el trámite administrativo.

El 5 de febrero, el Recurrente instó una *Moción en Solicitud de Reposición del Caso para Continuar el Trámite Administrativo*. Reconoció que no tuvo éxito en su intento de lograr la intervención

en el caso de este Tribunal y del Tribunal Supremo. Solicitó que se dejara sin efecto la orden que dio por admitido el requerimiento de admisiones y la orden que daba el caso por sometido, y que se le concediera un término de quince (15) días para contestar el Descubrimiento.

El 8 de febrero, la Examinadora emitió una *Orden* en la que declaró *No Ha Lugar* la *Moción en Solicitud de Reposición del Caso para Continuar el Trámite Administrativo*. En síntesis, resolvió que no procedía dejar sin efecto la anotación de rebeldía al Recurrente, debido a que no mostró justa causa para su incumplimiento con sus órdenes ni tampoco que pudiese tiene una buena defensa en los méritos. Además, ordenó al representante legal del Recurrente a pagar las sanciones económicas notificadas el 24 de octubre y el 13 de diciembre de 2023, en un término de diez (10) días calendario.

El 12 de febrero, el Recurrente presentó una *Moción Informativa*. Comunicó que había contestado el Descubrimiento e informó que, en los próximos diez (10) días, sometería su descubrimiento de prueba.

El 22 de febrero, la OEG se opuso a lo pretendido por el Recurrente. Enfatizó el incumplimiento repetido del Recurrente con las órdenes de la Examinadora, la ausencia de justa causa en los escritos del Recurrente para dejar sin efecto la anotación de rebeldía y la falta de razones que justificaran las omisiones de comparecer ante el foro adjudicador. Además, sostuvo que el Recurrente sabía que los procesos nunca fueron paralizados en la OEG.

El 23 de febrero, la Examinadora, mediante una *Orden*, denegó la *Moción Informativa* del Recurrente. Asimismo, se le apercibió al representante legal del Recurrente que la OEG podía recurrir al Tribunal de Primera Instancia, Sala de San Juan, para solicitar una orden dirigida a obligarlo a pagar las sanciones económicas impuestas previamente.

En igual fecha, el Recurrente instó una *Réplica* en la que reiteró sus argumentos previos. El 26 de febrero, la Examinadora declaró *No Ha Lugar* la *Réplica* del Recurrente.

Inconforme, el 27 de marzo, el Recurrente presentó otro recurso ante esta curia (KLRA202400159). Mediante una *Sentencia* dictada el 15 de abril, se desestimó el referido recurso por falta de jurisdicción. Reiteramos que, en lo referente a la revisión de decisiones administrativas, este Tribunal de Apelaciones tiene jurisdicción únicamente para revisar decisiones finales, y el proceso administrativo en el caso de referencia no había culminado.

En desacuerdo, el Recurrente instó otro recurso de *certiorari* ante el Tribunal Supremo, el cual fue denegado (CC-24-0295).

El 1 de agosto, la Examinadora emitió un *Informe de la Oficial Examinadora.* El 20 de agosto, notificada el 21 de agosto, el Director Ejecutivo de la OEG (el "Director") emitió una *Resolución,* mediante la cual acogió el referido *Informe.* Concluyó que el Recurrente infringió el inciso (h) del Art. 4.2 de la Ley 1, *supra,* por otorgar cuatro (4) contratos a su pariente, sin solicitar u obtener autorización previa de la OEG. Cónsono con ello, le impuso una multa de $8,000.00.

No conteste con el resultado, el 28 de agosto, el Recurrente presentó una *Moción de Reconsideración.* El 11 de septiembre, mediante una *Resolución,* se denegó la solicitud de reconsideración del Recurrente. El Director consignó que el Recurrente no demostró justificación alguna que moviera a la Examinadora a dejar sin efecto la anotación de rebeldía. Señaló que el Recurrente "tampoco nos ha ofrecido alguna explicación concreta que justifique su comportamiento contumaz de abandono y dejadez en este caso". Planteó que recurrir a los tribunales no era causa justificada para dejar de comparecer en el proceso adjudicativo. En cuanto a la infracción que se le imputó al Recurrente, enfatizó que la intención

no es uno de los elementos que requiere el Artículo 4.2(h) de la Ley 1-2012, *supra*, y que la falta de intención no es un atenuante.

Aún inconforme, el 11 de octubre, el Recurrente presentó el recurso que nos ocupa; formula el siguiente señalamiento de error:

> Erró la Oficina de Ética Gubernamental, por su Director Ejecutivo y la Oficial Examinadora que atendió el caso, al denegar el dejar sin efecto la anotación de rebeldía, cuando contestamos el descubrimiento de prueba cuando el Tribunal Supremo nos falló en contra por un juez, y el denegar la solicitud para que se pautara, aunque fuera, una vista en rebeldía, procediendo a emitir una Resolución Final y luego la denegatoria de nuestra petición de reconsideración, meramente amparado en la radicación de la Querella, que supuestamente debería ser sólida, y evitar que presentáramos nuestra evidencia testimonial y documental en defensa, aun luego de contestado el descubrimiento de prueba. También señalamos el error de haberle impuesto $200.00 de multa al suscribiente cuando nos denegamos (sic) a continuar el trámite administrativo a la luz de los esfuerzos realizados en el Tribunal de Apelaciones y en el Supremo.

El 8 de noviembre, la OEG presentó su alegato. Resolvemos.

## II.

En lo atinente a la evaluación de una solicitud de revisión judicial, los tribunales tienen que otorgar gran deferencia a las decisiones que toman las agencias administrativas, pues son éstas las que, de ordinario, poseen el conocimiento especializado para atender los asuntos que les han sido encomendados por ley. *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).

Se presumen correctas las determinaciones de hecho emitidas por las agencias administrativas y éstas deben ser respetadas a menos que quien las impugne presente evidencia suficiente para concluir que la decisión de la agencia fue irrazonable de acuerdo con la totalidad de la prueba examinada. *Íd.* Por lo tanto, "la revisión judicial" ha de limitarse a determinar si la agencia actuó arbitrariamente, ilegalmente o de manera tan irrazonable que su actuación constituyó un abuso de discreción". *Íd.*

Por su parte, debemos sostener las determinaciones de hecho de la agencia cuando estén basadas en evidencia sustancial que surja del expediente administrativo. 3 LPRA sec. 9675. Sin embargo, el tribunal podrá revisar en todos sus aspectos las conclusiones de derecho de la agencia. *Íd.*

En resumen, al ejercer nuestra facultad revisora, debemos considerar los siguientes aspectos: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están basadas en evidencia sustancial que surge del expediente, y (3) si las conclusiones de derecho fueron correctas. *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

## III.

De otra parte, la rebeldía es la consecuencia jurídica-procesal que sufre una parte cuando no comparece o se defiende de la demanda o querella en su contra, y tiene el fin de desalentar la dilación como estrategia de litigación. *Mitsubishi Motor v. Lunor y otros,* 212 DPR 807, 823 (2023); *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011). El propósito del mecanismo de la rebeldía es desalentar el uso de la dilación como estrategia de litigación. *González Pagán v. Moret Guevara,* 202 DPR 1062, 1069 (2019), citando a *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011).

En el caso de las agencias administrativas, la Sección 3.10 de la LPAU, 3 LPRA sec. 9650, establece lo siguiente:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible.

A esos efectos, el Artículo 6.7 del Reglamento dispone como sigue:

> Si una parte querellada debidamente citada no comparece a cualquier etapa del procedimiento establecido en este Capítulo, el oficial examinador o juez administrativo podrá anotarle la rebeldía, a iniciativa propia o a solicitud de parte querellante. La anotación de rebeldía deberá ser notificada por escrito a la parte querellada con los fundamentos para la anotación y el recurso de revisión disponible. Anotada la rebeldía, el oficial examinador o juez administrativo podrá continuar el procedimiento sin participación de la parte querellada.
>
> El oficial examinador o juez administrativo podrá dejar sin efecto una anotación de rebeldía. La omisión de anotar la rebeldía no afectará la validez de una resolución dictada en rebeldía.

En el ámbito civil, la anotación de rebeldía está reglamentada por la Regla 45.1 de las de Procedimiento Civil, 32 LPRA Ap. V. R. 45.1. Aunque, como norma general, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos, *Pérez v. VPH Motor Corp.*, 152 DPR 475, 484 (2000); *López Vives v. Policía de PR*, 118 DPR 219, 231 (1987), lo cierto es que nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo. Principalmente, cuando estas no sean incompatibles con dicho proceso y propicien una solución justa, rápida y económica. *Hosp. Dr. Domínguez v. Ryder*, 161 DPR 341, 346 (2004); *Pérez*, 152 DPR a la pág. 485.

El efecto de una anotación de rebeldía es que se tienen por admitidos como ciertos todos los hechos correctamente alegados en la demanda. *Álamo v. Supermercado Grande*, Inc., 158 DPR 93, 100 (2001). No obstante, ello no garantiza que la parte demandante habrá de obtener una sentencia favorable. Lo anterior, debido a que el trámite en rebeldía no priva al juzgador de evaluar si, en virtud de los hechos no controvertidos, existe efectivamente una causa de acción que amerite la concesión de un remedio. *Ocasio v. Kelly Servs. Inc.,* 163 DPR 653, 671-672 (2005).

Existen tres (3) fundamentos por los cuales una parte puede ser declarada en rebeldía. "El primero y más común fundamento es simplemente no comparecer al proceso después de haber sido correctamente emplazada". *Rivera Figueroa*, 183 DPR a las págs. 587-588. El segundo fundamento se origina cuando "...el demandado no formula contestación o alegación responsiva alguna en el término concedido por ley, habiendo comparecido mediante alguna moción previa de donde no surja la intención clara de defenderse". *Íd.*[3] "El tercer fundamento surge **cuando una parte se niega a descubrir su prueba después de haber sido requerido mediante los métodos de descubrimiento de prueba, o simplemente cuando una parte ha incumplido con alguna orden del tribunal**". *Íd.*, a la pág. 588. (Énfasis provisto).

IV.

Al determinar si debe dejarse sin efecto la anotación de rebeldía, se debe tomar en cuenta: (a) si el peticionario tiene una buena defensa en los méritos; (b) el tiempo que media entre el dictamen y la solicitud de relevo; (c) y el grado de perjuicio que pueda ocasionarse a la parte contraria. *Neptune Packing Corp. v. Wakenhut*, 120 DPR 283, 294 (1988).

La Regla 45.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.3, se interpreta de manera liberal, para tratar de brindarle a la parte su día en corte. *Rivera Figueroa*, 183 DPR a la pág. 591-592; *Neptune Packing Corp.*, *supra*. De conformidad, cualquier duda al respecto debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía. *Rivera Figueroa*, 183 DPR a la pág. 592; *J.R.T. v. Missy Mfg. Corp.*, 99 DPR 805, 811 (1971); *Diaz v. Tribunal*, 93 DPR 79, 87 (1966). Ello por lo "oneroso y drástico que resulta" sobre la parte afectada una anotación de rebeldía. *J.R.T.*, *supra*.

---

[3] Citas en el original omitidas.

En fin, privar a un litigante de su día en corte es procedente únicamente en "casos extremos", cuando "no hay duda de la falta de diligencia de la parte contra quien se toma la sanción." *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 819 (1986) (validando desestimación ante "crasa dejadez y falta de diligencia").

Es importante subrayar que la razón por la cual ocurrió el incumplimiento que generó la anotación de rebeldía es solamente uno de los factores a considerar. De hecho, aun cuando no exista una debida justificación para no haber contestado una demanda, ello, de por sí, no es necesariamente "determinante", sino que la decisión deberá responder a un análisis integral de todas las "circunstancias del caso", incluyendo, en particular, el "factor clave" de si existen defensas que "podrían ser meritorias". *Banco Central v. Gelabert Álvarez*, 131 DPR 1005, 1007 (1992); *Román Díaz v. Díaz Rifas*, 113 DPR 500, 506 (1982); *J.R.T.*, 99 DPR a la pág. 809.

V.

Como cuestión de umbral, destacamos que los tribunales le reconocemos discreción a las agencias administrativas al imponer sanciones, siempre que actúen dentro del marco de su conocimiento especializado y de la ley. La revisión judicial "no será para determinar si la sanción impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la sanción es demasiado fuerte". *Com. Seg. P.R. v. Antilles Ins. Co.*, 145 DPR 226, 234 (1998). Este análisis le corresponde a la agencia. Nuestra intervención se circunscribe a evitar que las agencias actúen en forma ilegal, arbitraria, sin justificación de modo que denote una actuación caprichosa o un abuso de discreción. *Íd.*

En el caso de referencia, evaluados los planteamientos de las partes a la luz de los criterios antes expuestos, concluimos que actuó válidamente el foro recurrido al anotarle la rebeldía al

Recurrente, declinar dejarla sin efecto y, luego, emitir su dictamen por la vía sumaria.

El récord contiene amplia justificación para la determinación de anotarle la rebeldía al Recurrente. Ello ante el incumplimiento reiterado de este con varias órdenes de la Examinadora e, incluso, su incomparecencia a una vista. En efecto, el Recurrente incumplió con las órdenes de la Examinadora del 11 de julio de 2023, 19 de julio de 2023, 15 de agosto de 2023, 14 de septiembre de 2023 y 24 de octubre de 2023. Tampoco compareció a la vista de conferencia con antelación a la audiencia, en las dos instancias en las que esta fue pautada, ni mostró justa causa para ello. Mucho menos presentó su parte del informe de abogados.

Contrario a lo planteado por el Recurrente, este no tenía derecho alguno a dar por paralizado el trámite administrativo simplemente por haber presentado unos recursos ante este Tribunal y ante el Tribunal Supremo. La única forma de que dicho trámite podría haber quedado paralizado es a través de una orden a esos efectos, bien por la Examinadora, o bien por este Tribunal o el Tribunal Supremo. Nada de ello ocurrió en momento alguno.

Por su parte, antes de recurrir a la sanción de anotación de rebeldía, la Examinadora le impuso sanciones económicas al abogado del Recurrente y se le apercibió a este, específicamente, que si persistía en su incumplimiento, se le anotaría la rebeldía. En efecto, en la *Orden* de 23 de octubre de 2023, se le indicó que mostrara causa por la cual no se debía anotarle la rebeldía y se le apercibió de las consecuencias de dicha anotación. Destacamos que esta *Orden* fue también notificada al Recurrente directamente. El Recurrente no mostró causa, ni solicitó prórroga alguna, optando, sencillamente, por ignorar la referida Orden.

Más aún, la Orden de 12 de diciembre de 2023, mediante la cual se le anotó la rebeldía al Recurrente, le apercibió sobre su

derecho a solicitar reconsideración y sobre el término para hacerlo. Esta orden también se le notificó directamente al Recurrente. El Recurrente ignoró los plazos indicados; no fue sino hasta el 23 de enero de 2024 que este solicitó que se dejara sin efecto la anotación de rebeldía.

Por otro lado, y más importante aún, el foro recurrido válidamente se negó a dejar sin efecto la anotación de rebeldía, pues **el Recurrente no ha demostrado que podría tener una buena defensa en los méritos**. La "defensa" del Recurrente se ha circunscrito, en todo momento, a alegar que él no conocía a la Prima, que no sabía que la Agencia la había contratado y que no tuvo "intención" de violar la ley. No obstante, como cuestión de derecho, aun si el Recurrente probase estas alegaciones, las mismas no constituyen una defensa válida a lo imputado por la OEG.

En efecto, el Artículo 4.2(h), *supra,* dispone que "[l]a autoridad nominadora o un servidor público con facultad de decidir o de influenciar a la autoridad nominadora, no puede intervenir, directa o indirectamente, en el nombramiento, ascenso, remuneración o contratación de su pariente." Por su parte, el término "pariente" incluye los "primos hermanos". Artículo 1.2(y) de la Ley 1, 3 LPRA sec. 1854(y). De lo anterior se desprende que no tiene pertinencia si el funcionario tenía "intención" o "conocimiento"; la responsabilidad administrativa fluye simplemente por el hecho, aquí incontrovertido, de que la autoridad nominadora intervino en la contratación de un pariente.

Es deber del funcionario que acepta un cargo de esta naturaleza conocer las restricciones que impone la Ley 1 y tener sistemas internos establecidos para asegurar que se cumpla con la referida ley. En este caso, el Recurrente debió hacer gestiones para conocer los nombres de todos sus "parientes", bajo la definición de la Ley 1, con lo cual podría haber transmitido esta información al

funcionariado de la Agencia de manera que se cumpliese fielmente con lo dispuesto por ley. Si, por negligencia en cuanto a conocer a sus parientes, o en cuanto a establecer sistemas internos efectivos para cumplir con la ley, el funcionario interviene en la contratación de un pariente, sin la autorización previa de la OEG, estará sujeto a responder administrativamente.

Finalmente, y contrario a lo planteado por el Recurrente, sobre la base del récord de este caso, no era necesaria la celebración de una vista en rebeldía; es decir, el caso válidamente podía adjudicarse por la vía sumaria. Una vista en rebeldía es necesaria cuando se "necesita corroborar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto para poder dictar sentencia en rebeldía". *Ocasio v. Kelly Servs. Inc.,* 163 DPR a la pág. 671 citando a *Hernández v. Espinosa,* 14 DPR 248, 272 (1998).

En este caso, los hechos consignados en la Moción, debidamente sustentados por la evidencia que se acompañó, y la ausencia de siquiera un intento del Recurrente de controvertir los mismos, hacían innecesaria una vista para corroborar la veracidad de estos o para investigar algún otro asunto.

En fin, hubo amplia y robusta justificación para la anotación de rebeldía al Recurrente. Ante la ausencia de una defensa viable en los méritos, no procedía dejar sin efecto dicha anotación. La Querella era susceptible de resolverse por la vía sumaria y, en los méritos, fue correctamente adjudicada, a la luz de los hechos incontrovertidos consignados en la Moción y acogidos por la Examinadora. Por tanto, en el proceso de referencia, no medió error de derecho o abuso de discreción alguno.

VII.

Por los fundamentos que anteceden, se confirma la *Resolución en Reconsideración* recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pagán Ocasio concurre con la determinación, sin Opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
