ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TERESA LOPEZ DICKENS<br><br>RECURRENTE<br><br>v.<br><br>CONSEJO DE TITULARES Y JUNTA DE DIRECTORES CONDOMINIO SOL Y PLAYA<br><br>RECURRIDA | KLRA202500231 | Revisión Judicial procedente del Departamento de Asuntos al Consumidor (DACO)<br><br>Querella Núm.: C-MAY-2023-0004704<br><br>Sobre: Condominio |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Flores y la Juez Lotti Rodríguez.[1]

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece Teresa López Dickens (parte recurrente) mediante un recurso de revisión administrativa presentado el 21 de abril de 2025, y nos solicita que revisemos la Resolución emitida por el Departamento de Asuntos al Consumidor (DACo) el 10 de febrero de 2025, notificada el 11 de febrero de 2025, en la que se declaró no ha lugar la querella instada por esta.

La parte recurrida presentó el 21 de mayo de 2025 su Alegato en Oposición a Revisión Judicial. Con el beneficio de la comparecencia de las partes, el Derecho y jurisprudencia aplicables, resolvemos.

**I.**

El 5 de octubre de 2019 fue celebrada una Asamblea Extraordinaria para los titulares del Condominio Sol y Playa con el propósito de llevar a cabo una votación "sobre si aceptar o rechazar una derrama" propuesta por el

---

[1] Conforme la OATA2025-0078 la Hon. Glorianne Lotti Rodríguez sustituye al Hon. Ángel R. Pagán Ocasio.

Consejo de Titulares para construir una verja, piscina, baños y demás, luego que estas instalaciones sufrieran daños por el paso del Huracán María. En esa misma fecha, se aprobó la derrama con una mayoría treinta y nueve (39) votos a favor y cinco (5) en contra.[2] Posteriormente, los titulares, José Barea[3], Flor Philippi[4] y Rubén Freyre Martínez[5] radicaron, de manera independiente, una querella en el Departamento de Asuntos del Consumidor (en adelante DACo).[6] Mediante esta querella, las partes impugnaron la aprobación de la derrama por entender que la construcción sugerida por la Junta de Directores constituían una mejora y por ende, requería unanimidad en los votos.

Por otro lado, el 6 de agosto de 2021, la Junta de Planificación del Gobierno de Puerto Rico, presentó en el Tribunal de Primera Instancia, Sala de Aguadilla (TPI), bajo el número AG2021CVC00945 una acción de Sentencia Declaratoria, Injuction y Revocación del Permiso de Construcción contra Sol y Playa Corp., Consejo de Titulares del Condominio Sol y Playa a través del presidente de la Junta de Directores Dr. Carlos Torres Sallichs, Lcdo. Norman Irizarry Díaz en su carácter como Secretario de la Junta de Directores del Consejo de Titulares del Condominio Sol y Playa. En donde, luego de varios tramites procesales, el TPI emitió el 14 de febrero de 2022, una *Sentencia* declarando nulo el permiso de construcción y, entre otras cosas, ordenó la paralización de las obras de construcción comenzadas y la demolición de lo ya edificado.[7]

Subsiguientemente, el 27 de agosto de 2022, José Barea; Flor Philippi y Rubén Freyre Martínez presentan una *Moción de Resolución Sumaria* ante DACo. El 16 de febrero de 2023, la Junta de Directores y el Consejo de

---

[2] Véase determinación de hecho #8 de la Resolución Sumaria del 28 de febrero de 2023 (Apéndice Recurrente #4, págs. 7-15).
[3] El 20 de enero de 2020, el Sr. José Barea radicó ante DACo la querella número C-SAN-2020-0006328.
[4] El 14 de julio de 2020, la Sra. Flor Philippi radicó ante DACo la querella número C-SAN-2020-0007227.
[5] El 11 de agosto de 2020, el Sr. Rubén Freyre radicó la querella número C-SAN-2020-007227.
[6] Luego de varios trámites procesales DACo consolidó las tres (3) querellas.
[7] Apéndice recurrente #5, págs. 16-33

Titulares del Condominio Sol y Playa presentaron su *Oposición a moción de resolución sumaria.*

El 28 de febrero de 2023, DACo emitió una Resolución Sumaria mediante la cual declaró nula y sin efecto la derrama aprobada el 5 de octubre de 2019 y ordenó la devolución de las cuantías pagadas por dicho concepto a José Barea; Flor Philippi y Rubén Freyre Martínez.[8]

Así las cosas, el Consejo de Titulares convocó el 20 de junio de 2023 una Asamblea Extraordinaria a celebrarse el 8 de julio de 2023 para discutir el cumplimiento de la Sentencia emitida en el caso AG2021CV00945, para la demolición del muro y micropilotes y contratación del ingeniero[9]. En esta Asamblea el Consejo aprobó una derrama por la suma de $500,000.00. La parte recurrente no asistió a la celebración de la asamblea, ya que reside fuera de Puerto Rico. Nombró mediante proxy a la titular Sandra Camuñas como su representante en la Asamblea Extraordinaria. No obstante, la Sra. Camuñas tenía otro proxy a favor del titular José Barea y ésta no tenía capacidad de votar debido a deuda pendientes de pago [10]. La derrama fue aprobada por unanimidad de los veinte (26) titulares presentes y/o representados por proxy válidos y con capacidad de ejercer el voto. [11]

El 12 de julio de 2023, la Junta de Directores le notificó a la parte recurrente una misiva para el cobro de su participación en la derrama por la suma de $6,698.82. El 3 de agosto de 2023, la parte recurrente contestó la carta indicando que no estaba de acuerdo con la aprobación de la derrama. Arguyó que la Asamblea no contó con el quórum necesario para la aprobación de la derrama; que se le privó de su derecho a participar de la Asamblea y que conforme con la Resolución del DACo con fecha del 28 de febrero de 2023, se le exime del pago de cualquier derrama posterior que este relacionada con

---

[8] Apéndice #4 de la parte recurrente, págs. 7-15.
[9] Apéndice #1 de la parte recurrente, pág. 1.
[10] Véase, Apéndice #2, 3 y 12 de la parte recurrente, págs. 2-6, 70.
[11] Véase, Apéndice #3 de la parte recurrente.

los hechos atendidos bajo dicha resolución. Asimismo, expuso que, conforme a la Ley de Condominios, estos no tenían una obligación de contribuir a los honorarios o gastos legales incurridos por la Junta o el Consejo de Titulares, ni a la multa impuesta, cuando el titular prevalece en su reclamación.

El 7 de agosto de 2023, la parte recurrente acude a DACo y presenta una querella bajo el número C-MAY-2023-0004704[12] en contra del Consejo de Titulares del Condominio Sol y Playa (parte recurrida). En su escrito, sostuvo que se opone a la derrama aprobada, por entender que la Asamblea no contó con el quórum necesario y que le privaron el derecho de participar de la misma. Finalmente, solicitó que se dejara sin efecto una determinación de la Junta de Condominios y/o Consejo de Titulares del Condominio Sol y Playa con relación a la imposición de una derrama.

Subsiguientemente, el 4 de octubre de 2023 la parte recurrente presentó *Moción sobre Enmienda a la Querella al Amparo de la Regla 16 del Reglamento Número 8034 del DACO*[13] y el 8 de julio de 2024 la parte recurrida presentó la *Contestación a Moción al Amparo de la Regla 16 del Reglamento Número 8034 del DACO.*[14] El 9 de julio de 2024, la parte recurrente presentó una *Moción Solicitando Anotación de Rebeldía* a tenor con la Regla 8.1 del Reglamento número 8034 de Procedimientos Adjudicativos del DACo.

Tras varios trámites procesales, el 14 de noviembre de 2024, DACo llevó a cabo la vista administrativa en la que declaró no ha lugar la anotación de rebeldía solicitada por la parte recurrente y procedió a atender los méritos de la querella enmendada.

Finalmente, el 10 de febrero de 2025, DACo emitió Resolución en la que declaró no ha lugar la querella instada por la parte recurrente.[15] La agencia determinó que conforme la prueba, los recurrentes no estuvieron presente en

---

[12] Apéndice #12 de la parte recurrente, págs. 70-75
[13] Apéndice #13 de la parte recurrente, págs. 76-85
[14] Apéndice Anejo B de la parte recurrida, págs. 3-11
[15] Apéndice recurrente #21, págs. 128-142

la Asamblea ni representada a través de proxy. Expuso que la prueba presentada estableció que no comparecieron por estos residir fuera de Puerto Rico. Concluyó que el residir fuera de la jurisdicción, así como el alegado ambiente hostil y lo resuelto por el DACo en su Resolución del 28 de febrero de 2023 no constituyen justa causa para no asistir a la Asamblea, cuyos acuerdos pretenden impugnar con la radicación de la querella. Por otro lado, determinó que lo resuelto y ordenado por el Tribunal de Primera Instancia, Sala de Aguadilla en el caso Civil número AG2021CV00945 en un asunto de seguridad, tanto para el medio ambiente como para el Condominio. Indicó que no se puede incumplir con la Orden del Tribunal y que su cumplimiento no puede estar supeditado al voto unánime de los titulares. Sostuvo que la orden de demoler obra de construcción, remover los escombros y devolver la propiedad a su estado natural se considera como una Obra urgente y no una mejora. Concluyó que procedía la aprobación por mayoría de una derrama, en el caso de que el Consejo de Titulares no contaran con los fondos suficientes para llevar a cabo la obra urgente. En su consecuencia, determinó que el Consejo de Titulares no actúo contrario a la Ley de Condominios, al aprobar la derrama el día 8 de julio de 2023 para cumplir con la orden del Tribunal de Primera Instancia, en el caso Civil núm. AG2021Cv00945; derrama que no requería unanimidad.

Así las cosas, el 4 de marzo de 2025, la parte recurrente presenta una *Moción de Reconsideración.*[16]

DACo no tomo acción alguna sobre la solicitud de reconsideración dentro del término estatutario, por lo que el 25 de abril de 2025, la parte recurrente comparece ante nos y plantea:

**PRIMER SEÑALAMIENTO DE ERRO: Erró DACo al concluir que la parte querellante-recurrente no cumplió con el requisito de impugnar las asambleas y los acuerdos logrados en las mismas, donde se aprobaron las correspondientes derramas; y, que la parte querellante no expresó en su querella haber comparecido a las asambleas y haber votado**

---

[16] Apéndice recurrente #22, págs. 143-171

**en contra de las derramas que se niega pagar. Igualmente, de no haber comparecido, tampoco expresó una razón justificada para su incomparecencia a las asambleas.**

**SEGUNDO SEÑALAMIENTO DE ERROR: Erró DACo al desestimar la querella de epígrafe al concluir que la parte querellante-recurrente tiene la obligación de asumir la derrama en controversia, al obviar lo dispuesto por el Artículo 65 de la Ley de Condominios que exime a la parte querellante, como parte vencedora/victoriosa, del pago de multas y penalidades, y que la derrama debe ser considerada como una multa para todos los efectos del Artículo 65 de la Ley de Condominios.**

**TERCER SEÑALAMIENTO DE ERROR:  Erró DACo al no anotar la rebeldía al querellado-recurrido, de acuerdo con la Regla 8.1 de Reglamento Número 8034 de Procedimientos Adjudicativos del mismo, que establece que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, advirtiendo que, de no recibirse la contestación a la querella en dicho término se le anotará la rebeldía.**

El 21 de mayo de 2025, la parte recurrida presento su *Alegato en Oposición a Revisión Judicial*.  En resumen, destaca que procede la confirmación de la determinación emitida por DACo.  Señala que la parte recurrente no demostró que existiera otra prueba en el récord que evidenciara que la determinación de la agencia fue irrazonable de acuerdo con la totalidad del expediente.  Adujo que de la prueba presentada por la parte recurrente surge que se cumplió con el quórum requerido y que la aprobación de la derrama fue para cumplir con una orden judicial.

Asimismo, esbozo que es la parte recurrente quien tiene el peso de la prueba y esta debía demostrar que las determinaciones de hechos no estaban basadas en el expediente y que las conclusiones a las que llego la agencia son irrazonables.  Resaltó que de la querella presentada y de la vista celebrada ante la agencia no surgen hechos que sostengan que las asambleas y aprobación de las derramas del 8 de julio de 2023 y del 17 de septiembre de 2023 hayan sido en violación a la Ley de Condominios.

**II.**

### A. Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.* (en adelante LPAU) establece el marco normativo que rige la revisión judicial de las decisiones emitidas por las agencias administrativas. *Otero Rivera v. Bella Retail Group, Inc.*, 213 DPR 473, 484 (2024). Al revisar las determinaciones administrativas, este foro apelativo, está obligado a conceder deferencia a las decisiones de las agencias en vista de que estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que les han sido delegados. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025) (citando a *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012)).

En virtud de lo anterior, se ha considerado la razonabilidad de la actuación cuestionada como criterio rector al revisar el proceder de la agencia recurrida. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan, supra.* Así pues, debemos evaluar que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que constituya un abuso de discreción. *Torres Rivera v. Policía de PR, supra.* Por consiguiente, no puede otorgárseles un "sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho". *Capote Rivera v. Voilí Voilá Corp.*, 213 DPR 743, 754 (2024). Es decir, si bien debemos concederles una amplia deferencia a las determinaciones de las agencias administrativas, dicha norma no es absoluta. *Capote Rivera v. Voilí Voilá Corp., supra*, 754.

A tenor, la deferencia cede cuando: "(1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos; (3) ha mediado una

actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales". *Capote Rivera v. Voilí Voilá Corp., supra.* (citando a *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021)).

En este sentido, existen tres aspectos que delimitan el alcance de la revisión judicial de las decisiones administrativas: "(1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron correctas". *Rolón Martínez v. Supte. Policía, supra,* pág. 36 (citando a *Pagán Santiago et al. supra*). Recientemente, nuestro más alto foro reiteró que **"al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática [...]"**. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR __ (2025) (Énfasis nuestro).

La Sección 3.14 de la LPAU dispone lo siguiente:

Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.
La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso.
La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.
La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos.
3 LPRA § 9654. (Énfasis nuestro).

De conformidad con lo expuesto, se ha interpretado que una "orden o resolución final" es aquella que "dispone del caso ante la agencia y tiene

efectos adjudicativos y dispositivos sobre las partes". *Pérez López v. Depto. Corrección*, 208 DPR 656, 672-673 (2022) (citando a *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 545 (2006)).  En particular, la Sección 4.2 de dicha ley establece que:

> Una parte adversamente afectada por una orden o resolución <u>final</u> de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones**,** dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. 3 LPRA sec.  9672.

## A. La Ley de Condominios de Puerto Rico

La Ley Núm. 5 de 23 de abril de 1973, según enmendada, instituyó el Departamento de Asuntos del Consumidor (Daco) con el propósito primordial de vindicar e implementar los derechos del consumidor. Véase, Exposición de Motivos de la Ley Orgánica del Departamento de Asuntos del Consumidor, 3 LPRA sec. 341b; Ortiz Rolón v. Armando Soler Auto Sales, Inc., 202 DPR 689, 696 (2019); *Ayala v. Junta Cond. Bosque Sereno,*190 DPR5 547, 548 (2014).

Luego de la aprobación de la referida ley, el legislador amplió el ámbito jurisdiccional del DACo para que atendiera ciertos asuntos relativos a la antigua Ley de Propiedad Horizontal. A esos efectos, cuando un titular de un condominio dedicado a vivienda pretende impugnar alguna actuación por violaciones a dicha legislación, el foro para ventilarse es el DACo. *Ayala v. Junta Cond. Bosque Sereno, supra*, pág. 549.

A estos fines, el DACo creó una División Especial de Adjudicación de Querellas de Condominios, para atender todo lo relacionado a todo condominio en el que exista por lo menos un apartamento dedicado a vivienda. Artículo 66 de *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 16 de agosto de 2020, según enmendada, 31 LPRA sec. 1923k.

El Artículo 65 de la Ley 129-2020, establece que las acciones u omisiones de la Junta de Directores, así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares cuando: (a) sean contrarios a esta Ley, la escritura matriz y reglamento del condominio; (b) resulten gravemente perjudiciales a los intereses de la comunidad o a un titular y (c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra. Asimismo, dispone que en los casos de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor. El titular que quiera impugnar una acción u omisión de la Junta de Directores o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares. También tendrá que acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. Si el titular estuvo ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada[17]. Dicha disposición también establece que el titular que prevalezca en cualquier **reclamación de su querella** no tendrá que contribuir a los honorarios o gastos legales en que incurra la Junta o el Consejo de Titulares, ni a la multa que, **en su caso**, pudiera imponérsele a la parte querellada. (Énfasis suplido).

Por otro lado, el Artículo 49 de la referida ley dispone, en lo pertinente, sobre los poderes y deberes del Consejo de Titulares, que:

> Corresponde al Consejo de Titulares:
> a) [...]

---

[17] Nuestro Tribunal Supremo ha establecido que [l]a justa causa se acredita mediante explicaciones concretas y particulares, debidamente evidenciadas en el escrito, que les permitan a los tribunales concluir que hubo una excusa razonable para la tardanza o la demora. No constituyen justa causa las vaguedades y excusas o los planteamientos estereotipados. De lo contrario, la acreditación de la justa causa se convertiría en un juego de "mero automatismo" con justificaciones genéricas carentes de los detalles que causaron la dilación. La existencia de justa causa es un elemento que ha de evaluarse caso a caso. Al justipreciar las razones ponderadas por una parte, el juzgador debe llevar a cabo un análisis cuidadoso de las explicaciones que demuestren el incumplimiento y de la evidencia que lo sustenta". Rivera Marcucci et al v. Suiza Dairy, 196 DPR 157 (2016)

...

d) Aprobar la ejecución de obras extraordinarias y mejoras y recabar fondos para su realización. El presupuesto anual incluirá una partida de fondo de reserva que no será menor del cinco por ciento (5%) del presupuesto total de gastos del condominio para ese año. La aportación se depositará mensualmente en la cuenta independiente de reserva a base de lo que hubiera sido el recaudo de las cuotas de mantenimiento del mes transcurrido.

Dicho fondo se irá nutriendo hasta alcanzar una suma igual al dos por ciento (2%) del valor de reconstrucción, cuando el Consejo de Titulares decidirá si se continúa o no aportando al mismo.

Los dineros se conservarán en una cuenta especial, separada de la de operaciones, y sólo podrá disponerse de todo o parte del mismo para la realización de obras extraordinarias o urgentes y para las obras de mejora, según se dispone a continuación. Una vez el balance del fondo sea menor al mínimo antes dispuesto, deberán restituirse las aportaciones mensuales hasta alcanzar nuevamente el dos por ciento (2%) del valor de reconstrucción del inmueble.

1. Obras Extraordinarias. — El Director, el Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para costear este tipo de obra, previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria.

2. Obras Urgentes. — El Director, Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para toda obra urgente no prevista en el presupuesto anual, previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria para atender este asunto específico. La asamblea para autorizar el desembolso se convocará y celebrará en un término expedito no menor de veinticuatro (24) horas. La notificación podrá ser mediante entrega personal, debajo de cada puerta o por cualquier medio alterno disponible, incluyendo correo electrónico.

3. Obras de Mejoras. — Las obras de mejora sólo podrán realizarse, mediante la aprobación de dos terceras partes (2/3) de los titulares que a su vez reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes. Se requerirá el consentimiento unánime del Consejo de Titulares cuando dichas obras de mejoras requieran derrama.

El Artículo 51 de la Ley 129-2020, sobre el voto dispone que "[l]a asistencia a las asambleas del Consejo de Titulares será personal o por representación legal o voluntaria, bastando para acreditar esta última un escrito firmado por el titular. El poder tendrá que estar fechado e indicará las fechas de la asamblea para la que se autoriza la representación, [...]." No obstante, "[n]inguna de las personas autorizadas a representar a un titular podrá ejercer el derecho al voto en representación de más de un titular".

**B. Rebeldía**

La Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, dispone que cuando una parte contra la cual se solicita una sentencia que conceda un remedio afirmativo no contesta la demanda o no se defiende como las leyes y las reglas estipulan, el tribunal podrá anotarle la rebeldía por iniciativa propia o por solicitud de parte. *González Pagán v. Moret Guevara*, 202 DPR 1062 (2019) (citando a *Bco. Popular v. Andino Solís*, 192 DPR 172, 179 (2015); Correa v. Marcano, 139 DPR 856, 861 (1996); *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 DPR 679 (1987)). Esto tiene como propósito disuadir a aquellos que recurran a la dilación de los procedimientos como una estrategia de litigación. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011); *Ocasio v. Kelly Servs.,* 163 DPR 653, 671 (2005). El objetivo de dicha disposición procesales no es otorgar una ventaja indebida a un reclamante para lograr obtener un dictamen favorable sin previamente acreditar tal derecho en una vista en los méritos. Su propósito es crear una norma procesal en beneficio de la sana administración de la función adjudicativa del Tribunal, dirigida a estimular la tramitación justa, rápida y económica de las controversias. *J.R.T. v. Missy Mfg. Corp.*, 99 D.P.R. 805, 811 (1971).

Por su parte, el Reglamento de Procedimientos Adjudicativos, Núm. 8034 del 13 de junio de 2011, tiene como propósito asegurar la solución justa, rápida y económica de las querellas presentadas ante DACo y proveer un procedimiento uniforme para su adjudicación. Regla 1 del Reglamento Núm. 8034.

En lo particular, la Regla 8.1 del Reglamento Núm. 8034 establece lo siguiente:

> El Departamento notificará a todos aquellos querellados la querella radicada en su contra. Esta notificación será un aviso escrito de que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, advirtiendo

además que de no recibirse la contestación a la querella en dicho término se le anotará la rebeldía. [...]

No obstante, debemos destacar que en nuestro ordenamiento jurídico existe una política judicial que fomenta el mayor acceso posible de los ciudadanos a los tribunales para que sus controversias puedan ser resueltas en los méritos. *Negrón v. Srio. De Justicia*, 154 DPR 79, 93 (2001). Véanse, *Echevarría Jiménez v. Sucn. Pérez Meri*, 123 DPR 664,673 (1989); *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 822-823 (1980); *Arce v. Club Gallístico de San Juan*, 105 DPR 305 (1976); *Acevedo v. Compañía Telefónica de P.R.*, 102 DPR 787,791 (1974); *Ramírez de Arellano v. Srio. de Hacienda*, 85 DPR 823,829 (1962).

**III.**

En el recurso ante nuestra consideración, la parte recurrente señaló como primer señalamiento de error, que el DACo falló al concluir que la parte querellante-recurrente no cumplió con el requisito de haber comparecido a las asambleas y haber votado en contra de las derramas. Así, como no haber demostrado justa causa para su incomparecencia. Como segundo error, la parte recurrente planteó que DACo erró al desestimar la querella al concluir que la parte querellante tenía la obligación de asumir la derrama, al obviar lo dispuesto por el Artículo 65 de la Ley de Condominios, que exime a la parte victoriosa de una querella contribuir al pago de los honorarios de abogados, multas y penalidades. Por estar los primeros dos (2) errores relacionados, procedemos a discutirlos en conjunto.

La parte recurrente presentó el 7 de agosto de 2023 una querella ante DACo inicialmente impugnando los acuerdos aprobados en la Asamblea del 8 de julio de 2023 para una derrama de $500,000.00 para cumplir con la Sentencia y Orden emitida por el Tribunal de Primera Instancia, Sala de Aguadilla en el caso AG2021CV00945. Mediante dicha Sentencia, se le

ordenó al Consejo de Titulares del Condominio Sol y Playa, entre otros demandados, a demoler cualquier construcción realizada bajo el permiso nulo y remover los escombros de la propiedad; devolviéndola a su estado natural. Posteriormente, el 4 de octubre de 2023 enmienda la querella para impugnar los acuerdos aprobados en la Asamblea del 17 de septiembre de 2023 en donde aprobaron una segunda derrama por la cantidad de $444,000.00 para el cumplimiento con la Sentencia.

Ahora bien, conforme indicamos anteriormente, la Ley de Condominios dispone que el titular que pretenda impugnar los acuerdos establecidos por el Consejo de Titulares mediante Asamblea deberá demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares; que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este. En el caso de que el titular estuviere ausente a pesar de que fue debidamente notificado deberá probar que su ausencia estuvo justificada. Surge de los apéndices de los recursos y de la Resolución recurrida que la parte recurrente no asistió a la Asamblea Extraordinaria del 8 de julio de 2023 ni la Asamblea Extraordinaria del 17 de septiembre de 2023, a pesar de haber sido notificada de la convocatoria. Específicamente para la Asamblea Extraordinaria del 8 de julio de 2023, se demostró que la parte recurrente designó mediante *proxy* a la titular Sandra Camuñas como su representante. No obstante, la titular Sandra Camuñas tenía otro *proxy* a favor del titular José Barea. Además, la Sra. Camuñas no tenía capacidad de votar por tener una deuda con el Consejo de Titulares. Igualmente, surge del expediente que la recurrente no asistió a la Asamblea Extraordinaria del 17 de septiembre de 2023 y no hay evidencia de que se haya otorgado un poder (*proxy*) a algún titular para que los representara en dicha asamblea. Por otro lado, se desprende de la prueba documental que, para el 18 de mayo de 2023, la parte recurrente tenía una deuda de $5,648.55. Ante ello, coincidimos con el DACo que la parte recurrida no demostró haber cumplido con la Ley de

Condominios de acreditar que estuvo presente o representado en la asamblea en que se tomó el acuerdo que impugna y que votó en contra de este.

Respecto a la justa causa por su incomparecencia a las Asambleas Extraordinarias, la parte recurrente indicó que no asistió a estas por sentir un ambiente hostil y porque DACo había declarado nula la derrama aprobada el 5 de octubre de 2019 y entiende que dicha determinación invalida cualquier procedimiento posterior. Sin embargo, DACo determinó que el residir fuera de Puerto Rico, el sentir que había un alegado ambiente hostil en las asambleas o el pensar que la determinación de DACo en torno a la derrama del 5 de octubre de 2019 la eximia de comparecer no constituyó justa causa. No se desprende de los documentos del expediente que DACo haya actuado de forma irrazonable, arbitraria o ilegal al descartar las razonables provistas por la recurrente como justa causa para su incomparecencia a las Asambleas Extraordinarias. En su consecuencia, no procede nuestra intervención con la decisión de la agencia.

Por otro lado, la parte recurrente no está exento de contribuir a los honorarios o gastos legales según lo establece el Artículo 65 de la Ley de Condominios. Específicamente, dicho estatuto dispone que "el titular que prevalezca **en cualquier reclamación de <u>su</u> querella** no tendrá que contribuir a los honorarios o gastos legales en que incurra la Junta o el Consejo de Titulares, **ni a la multa que, en <u>su</u> caso, pudiera imponérsele a la parte querellada".** Conforme a la prueba documental, los honorarios y gastos legales, así como los gastos que tiene que incurrir el Consejo de Titulares para cumplir con la Sentencia del Tribunal de Primera Instancia, Sala de Aguadilla en el caso civil núm. AG2021CV00945, son como consecuencia de lo resuelto en dicho caso y la determinación emitida por el DACo en las querellas C-SAN-2020-0006328, C-SAN-2020-0007078 y C-SAN-2020-0007227. La parte recurrente no fue parte promovente en ninguno de los referidos procesos adjudicativos. Tampoco hay evidencia en el

expediente, que la parte recurrente haya presentado una reclamación contra el Consejo de Titulares en la cual resultó ser la parte victoriosa. De manera clara, la precitada disposición solamente exime al titular victorioso que presenta una reclamación contra el Consejo de Titulares por los gastos legales y multas impuestas como consecuencia de la presentación de su caso.

En su tercer señalamiento de error, la parte recurrente manifestó que el DACo erró al no haberle anotado la rebeldía a la parte querellada-recurrida conforme dispone la Regla 8.1 del Reglamento Número 8034 de Procedimientos Adjudicativos.

En este caso, DACo denegó la solicitud de anotación de rebeldía y entró a atender los méritos de la querella. La anotación de rebeldía no eximia a la parte recurrida de establecer los elementos que dispone la Ley de Condominios para impugnar los acuerdos aprobados por el Consejo de Titulares. Es por ello, que la anotación de rebeldía no conlleva automáticamente que la parte recurrente prevalezca en su reclamo. Como expresamos anteriormente, los foros adjudicativos deben siempre inclinarse a favor de que las causas se atiendan y se diluciden en un juicio y en sus méritos. Por tanto, concluimos que el foro recurrido no cometió el tercer señalamiento de error.

**IV.**

Por los fundamentos antes expuestos, se *confirma* la Resolución recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones