ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| COOPERATIVA DE AHORRO Y CRÉDITO NUESTRA SEÑORA DE LA CANDELARIA (CANDEL COOP).<br><br>Parte Apelante<br><br>v.<br><br>JUAN C. DOMÍNGUEZ NIEVES Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA CON FULANA DE TAL<br><br>Parte Apelada | TA2026AP00197 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2025CV01277<br><br>Sala: 601<br><br>Sobre: Cobro de dinero (vía ordinaria) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Compareció ante este Tribunal la parte apelante, Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria (en adelante, "Cooperativa" o "Apelante"), mediante recurso de apelación presentado el 24 de febrero de 2026. Nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, el "TPI"), el 26 de enero de 2026 y notificada al día siguiente. Dicho dictamen fue objeto de una "**Reconsideración**" que fue declarada "No Ha Lugar" mediante *Resolución Interlocutoria* del 29 de enero de 2026.

Por los fundamentos que expondremos a continuación, se *modifica* la *Sentencia* apelada y así *modificada*, se *confirma.*

**I.**

El presente caso tuvo su inicio el 10 de mayo de 2025, con la presentación de una "**Demanda**" sobre cobro de dinero, por parte de la Cooperativa en contra del Sr. Juan C. Domínguez Nieves (en adelante, el "señor Domínguez Nieves"), su esposa de nombre desconocido y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, los "Apelados"). Mediante la misma, expuso que, el 28 de octubre de 2022, el señor Domínguez Nieves suscribió un pagaré a favor de la Cooperativa por la suma principal de $12,000.00, con intereses al 13.70%, el cual se obligó a pagar en 84 plazos mensuales consecutivos de $223.00 y un último pago de $208.49 (en adelante, "préstamo personal"). Expresó que, aunado a lo anterior, el señor Domínguez Nieves suscribió otro contrato con intereses por financiamiento para mercancía y servicios al tipo de 12.95% anual, cargos por financiamiento por adelantos en efectivo y cargos por financiamiento para transferencias de balance de otras instituciones (en adelante, "contrato de tarjeta de crédito").

Asimismo, señaló que, tanto en el préstamo personal como en el contrato de tarjeta de crédito, el señor Domínguez Nieves se obligó, entre otras cosas, a un pago fijo de la suma principal para las costas, gastos y honorarios de abogado, cuando el Apelante tuviera que recurrir a los foros judiciales a reclamar cualquier deuda acumulada por los Apelados. Alegó que el señor Domínguez Nieves no había cumplido con las referidas obligaciones, por lo que le adeudaba la suma de $11,231.80, por concepto del préstamo personal y $4,403.63 relacionado al contrato de la tarjeta de crédito, respectivamente, hasta el 9 de abril de 2025, más los intereses y recargos que acumulara a partir de dicha fecha. En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" la reclamación presentada.

Así las cosas, el 19 de enero de 2025, la Cooperativa presentó una "**Moción Solicitando Anotación de Rebeldía y se Dicte Sentencia**" mediante la cual indicó que el señor Domínguez Nieves fue debidamente emplazado mediante publicación de edicto en el periódico El Nuevo Día. No obstante lo anterior, afirmó que, a la fecha de presentación de dicho

escrito, el señor Domínguez Nieves no había contestado la "**Demanda**", transcurriendo así el tiempo dispuesto por ley. En sintonía con ello, le peticionó al foro de instancia que le anotara la rebeldía al señor Domínguez Nieves y dictara sentencia, de conformidad con la Regla 45.2 de Procedimiento Civil, 32 LPRA, Ap. V, R. 45.2.

Finalmente, el 27 de enero de 2026, el TPI dictó *Sentencia,* declarando "Ha Lugar" la "**Demanda**". En consecuencia, condenó al señor Domínguez Nieves al pago de la suma de $8,482.65 por el préstamo personal obtenido y $4,283.63 por la deuda incurrida con la tarjeta de crédito. Igualmente, impuso el pago del interés legal vigente, desde la fecha en que se dictó la *Sentencia* y hasta que fuera satisfecha. Además, impuso el pago de la cantidad de $3,212.87 en concepto de costas, gastos y honorarios de abogado.

Insatisfecho con ello, el 28 de enero de 2026, la Cooperativa presentó una "**Reconsideración**" a través de la cual expresó que, en los mencionados contratos, el señor Domínguez Nieves se obligó a pagar la suma de treinta y tres por ciento (33%) de las respectivas cantidades adeudadas al momento de entablarse la reclamación judicial. Por esta razón, le solicitó al TPI lo siguiente: (1) la suma de $3,706.49 correspondiente al 33% de la deuda por concepto del préstamo personal otorgado y (2) $1,453.19 correspondiente al 33% de la deuda de la tarjeta de crédito en cuestión. Dicha petición fue declarada "No Ha Lugar" mediante *Resolución Interlocutoria* el 29 de enero de 2026.

Aún inconforme con lo anteriormente resuelto, la Cooperativa acudió ante nos mediante el recurso de epígrafe, en el que señaló la comisión del siguiente error:

> Primer error: Erró el TPI al imponer una cuantía de honorarios de abogados que ya está previamente pactada entre las partes por el documento de Contrato.

**II.**

**A.**

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Merchant Advanc, LLC v.

Conceptos Cuisine, LLC, 216 DPR ___ (2026); 2026 TSPR 15; Batista Valentín v. Sucn. José E. Batista Valentín y otros, 216 DPR ___ (2025); 2025 TSPR 93. A base de éste, las partes contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 6242. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. 31 LPRA sec. 9754; 31 LPRA sec. 8983. Es por ello que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto determinable y (3) causa lícita. 31 LPRA 6131; 31 LPRA sec. 6142; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". 31 LPRA sec. 6161.

Ahora bien, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver el contrato por falta de cumplimiento con una obligación principal. 31 LPRA sec. 9823. Esto es, el perjudicado puede reclamar el cumplimiento del contrato o la resolución de la obligación con el resarcimiento de los daños causados. Íd. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA

Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995). Así, nuestro más Alto Foro ha expresado que:

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

En materia contractual, es norma conocida que, "si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras". 31 LPRA sec. 6342. Es por ello que nuestro Tribunal Supremo ha reconocido que cuando los términos de un contrato, sus condiciones y sus exclusiones son claros y específicos, y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. San Luis Center Apts. *et al.* v. Triple-S, 208 DPR 824, 832 (2022); Rivera Rodríguez v. Rivera Reyes, 168 DPR 193, 212 (2006).

No obstante, cuando de la lectura del texto, las cláusulas no son claras o no permiten una comprensión única de lo acordado, los tribunales estamos llamados a interpretar el contrato partiendo de la verdadera y común intención de las partes. Merle v. West Bend Co., 97 DPR 403, 409-410 (1969). Igualmente, se debe presuponer la "lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas". SLG Irizarry v. SLG García, 155 DPR 713, 726 (2001).

Partiendo de esta premisa, al momento de interpretar el contrato y establecer cuál es la intención de las partes, debemos recurrir a las normas de hermenéutica contractual establecidas en los Artículos 353 al 358 del Código Civil de Puerto Rico, 31 LPRA secs. 6341-6346. En lo específico a la controversia ante nos, el Código Civil establece que, si el negocio jurídico es bilateral, la disposición ambigua debe interpretarse en sentido desfavorable a quien la redactó y en favor de la parte que tuvo menor poder

de negociación. 31 LPRA sec. 6346. Por otro lado, las cláusulas del contrato se interpretarán "las unas por medio de las otras, ya pertenezcan al mismo negocio jurídico, ya a negocios jurídicos conexos, y mediante la atribución del sentido apropiado al conjunto". 31 LPRA sec. 6344. Es decir, se analizarán en su totalidad con el propósito de entender su verdadero significado. CNA Casualty of P.R. v. Torres Díaz, 141 DPR 27, 39 (1996).

Por su parte, un contrato se considera celebrado por adhesión cuando el aceptante se ve obligado a aceptar los términos previamente establecidos. 31 LPRA sec. 9802. Las disposiciones de este tipo de contrato deben también ser interpretadas en sentido desfavorable a la persona que las redactó y en favor de la persona que se vio precisada a aceptar su contenido. Íd. Así pues, son especialmente anulables en los contratos celebrados por adhesión las cláusulas que no se redactan de manera clara, completa y fácilmente legible y aquellas que limitan al adherente la interposición de acciones. 31 LPRA sec. 9803.

Ahora bien, los tribunales tenemos la ineludible labor de velar por el cumplimiento específico de toda obligación contractual, sin relevar a las partes contratantes del cumplimiento de ésta. Siempre velando porque el contrato esté enmarcado en el ámbito de lo legítimo y no adolezca de vicio alguno. Cervecería Corona v. Commonwealth Ins. Co., 115 DPR 345, 351 (1984); Olazábal v. U.S. Fidelity,etc. 103 DPR 448, 462 (1975).

**B.**

Es obligación de toda parte contra la cual se presenta una demanda de notificar su contestación dentro de treinta (30) días de haber sido emplazado conforme a derecho. Regla 10.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 10. No obstante, la precitada Regla también establece que "[l]a notificación de una moción permitida por estas reglas o bajo la Regla 36, altera los términos arriba prescritos […], a menos que por orden del tribunal se fije un término distinto […]". 32 LPRA Ap. V, R. 10.1 (énfasis nuestro).

A pesar de ello, las Reglas de Procedimiento Civil establecen que procede la anotación de rebeldía "[c]uando una parte contra la cual se

solicite una sentencia que concede un remedio afirmativo **haya dejado de presentar alegaciones** o de defenderse en otra forma, según se dispone en estas reglas". Regla 45.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1 (énfasis suplido). Este remedio puede ser utilizado tanto en las instancias mencionadas, como en aquéllas en que una de las partes en el pleito no ha cumplido con algún mandato del tribunal, que conlleva la obligación del foro judicial a imponerle la rebeldía como sanción. Ocasio v. Kelly Servs., 163 DPR 653, 670 (2005). A pesar de ello, la anotación de rebeldía "como sanción por su incumplimiento con una orden del tribunal siempre se debe dar dentro del marco de lo que es justo, y la ausencia de tal justicia equivaldría a un abuso de discreción". Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 590 (2011).

Se ha resuelto que la consecuencia jurídica de anotar la rebeldía a una parte en un pleito será tener como aceptadas cada una de las alegaciones bien formuladas que hubieran sido incluidas en la demanda. Vélez v. Boy Scouts of America, 145 DPR 528, 534 (1998). Ahora bien, en el descargue de sus funciones, el Tribunal de Primera Instancia está en la obligación de comprobar cualquier aseveración esgrimida mediante la aportación de prueba que demuestra lo alegado. Hernández v. Espinosa, 145 DPR 248, 272 (1998). "[S]i un tribunal necesita, para poder dictar sentencia en rebeldía, comprobar la veracidad de cualquier alegación o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas." Ocasio v. Kelly Servs., *supra*, pág. 671.

En armonía con lo anterior, nuestro Tribunal Supremo ha reiterado que en el ámbito de la adjudicación de un pleito en rebeldía los foros judiciales no pueden actuar como meros autómatas. Íd., págs. 671-672. Es decir, "un trámite en rebeldía no garantiza per se, una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho". Continental Ins. Co. v. Isleta Marina, 106 DPR 809, 817 (1978). Nótese que el objetivo de este mecanismo procesal no es conferirle una ventaja al demandante para

obtener una sentencia a su favor, sino que lo que se persigue es estimular la tramitación ágil y efectiva de los pleitos ante los tribunales. J.R.T. v. Missy Mfg. Corp., 99 DPR 805, 811 (1971).

Por este motivo, un tribunal, al momento de resolver una solicitud de anotación de rebeldía, debe interpretar la Regla 45 de Procedimiento Civil, *supra*, de forma liberal, lo que significa que debe siempre resolver cualquier duda a favor de la parte que se opone a la concesión de la rebeldía. Esto es cónsono con la política judicial que prefiere que los casos se vean en sus méritos. Neptune Packing Corp. v. Wackenhut Corp.*,* 120 DPR 283, 293 (1988); Imp. Vilca, Inc v. Hogares Crea, Inc.*,* 118 DPR 679, 686 (1987).

La Regla 45.3 de Procedimiento Civil dispone la facultad para dejar sin efecto una anotación de rebeldía. 32 LPRA Ap. V, R. 45.3. La misma señala que "[e]l tribunal podrá dejar sin efecto una anotación de rebeldía por causa justificada, y cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2. Íd. Nuestro más Alto Foro ha reconocido que la parte que alegue causa justificada puede: (1) presentar evidencia de circunstancias que a juicio del tribunal demuestren justa causa para la dilación, o (2) probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que se puede ocasionar a la otra parte con relación al proceso es razonablemente mínimo. Rivera Figueroa v. Joe's European Shop, 183 DPR 580, 593 (2011).

**III.**

En el presente caso, la Cooperativa nos solicitó la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la "**Demanda**" objeto de la presente controversia.

Como único señalamiento de error esgrimido, el señor Domínguez Nieves sostiene que el TPI erró al imponer una cuantía de honorarios de abogado distinta a la ya pactada previamente entre las partes, al efectuar el cómputo de 33% tomando como base la cuantía adeudada al momento de dictarse la *Sentencia*, en lugar de la suma reclamada en la "**Demanda**". Es su contención que, al así proceder, el foro apelado ignoró la letra de los contratos en controversia. Veamos.

Según se desprende de los hechos del caso, el 10 de mayo de 2025, la Cooperativa presentó una "**Demanda**" sobre cobro de dinero en contra de los Apelados. En particular, expresó que el señor Domínguez Nieves obtuvo dos (2) préstamos personales por la suma principal de $12,000.00 y una tarjeta de crédito de dicha entidad financiera, deudas que alegó dejaron de ser pagadas. Afirmó, además, que ha realizado múltiples gestiones para cobrar el dinero pendiente, pero que las mismas habían resultado infructuosas. Así pues, le peticionó al foro de instancia que condenara a los Apelados al pago del monto pactado. Tras varios trámites procesales, una solicitud de anotación de rebeldía en contra del señor Domínguez Nieves, el TPI emitió una *Sentencia* mediante la cual declaró "Ha Lugar" la referida "**Demanda**" y condenó a los Apelados a satisfacer las siguientes sumas: (1) $8,482.65 por concepto de préstamo personal; (2) $4,283.63 por concepto de la deuda incurrida con la tarjeta de crédito y (3) la cantidad de $3,212.87 en concepto de costas, gastos y honorarios de abogado.

Tras un análisis detenido y mesurado del expediente apelativo ante nuestra consideración, incluyendo la "**Demanda**", la *Moción de Anotación de Rebeldía* y la *Sentencia*, hemos arribado a la conclusión de que el TPI actuó correctamente al declarar "Ha Lugar" las reclamaciones objeto de la presente controversia. Sin embargo, notamos que se equivocó al efectuar los cálculos correspondientes a la suma relacionada a las costas, gastos y honorarios de abogado pactados. Nos explicamos.

El 8 de julio de 2022, el señor Domínguez Nieves suscribió con la Cooperativa un "**Contrato de Venta al Por Menor a Plazos**" para obtener una tarjeta de crédito con dicha entidad financiera. Respecto a los honorarios de abogado, dicho acuerdo contractual dispone lo siguiente:

> Honorarios de Abogados: Cuando sea referido a un abogado que no sea empleado de la Cooperativa, para una acción de cobro de dinero, **los cargos por dichos honorarios serán el 33% del <u>balance de la deuda</u>**. Si mediare una estipulación, los cargos por dichos honorarios no excederán la cantidad de cincuenta dólares ($50.00) o el treinta y tres por ciento (33%) de las mensualidades vencidas y cobradas, lo que sea mayor.[1]

---

[1] *Véase*, <u>SUMAC-TA</u>, Anejo Núm. 6 (énfasis suplido).

Posteriormente, el 28 de octubre de 2022, el señor Domínguez Nieves suscribió un pagaré a favor de la Cooperativa por la suma principal de $12,000.00, con intereses al 13.70% y vencedero el 28 de octubre de 2029. En cuanto a las costas, gastos y honorarios de abogado, establece lo siguiente:

> En consecuencia, los infrascritos o suscribientes se obligan solidariamente con sus bienes presentes y futuros, sean estos gananciales o privativos, al pago de esta obligación, a las costas, los gastos, los honorarios de abogado en que LA ACREEDORA tenga que incurrir para la reclamación judicial. **Por concepto de costas, gastos y honorarios de abogado se pacta la suma de treinta y tres por ciento (33%) de la cantidad adeudada al momento de establecerse la reclamación judicial**. Esta cantidad se considerará como una suma líquida, vencida y exigible por el solo hecho de la radicación de la demanda por cobro de dinero. Los infrascritos o suscribientes se someten expresamente a la competencia de los tribunales de justicia de Puerto Rico y renuncian por la presente a los derechos de presentación, protesta, aviso y demanda de pago.[2]

Debido al incumplimiento del señor Domínguez Nieves con su obligación de efectuar los pagos mensuales pactados, la Apelante instó una acción de cobro de dinero ante el foro de instancia. Tras evaluar la prueba presentada, el TPI declaró "Ha Lugar" la "**Demanda**" y dictó *Sentencia* condenando a los Apelados al pago de las sumas adeudadas, incluyendo, entre otras partidas, la cantidad de $3,212.87 por concepto de costas, gastos y honorarios de abogado.

No obstante lo anterior, del legajo apelativo surge que dicho cálculo resulta incorrecto. Específicamente, fuera de las alegaciones incorporadas a la "**Demanda**" la **única prueba** que consta en autos de ambas deudas establece que el señor Domínguez Nieves adeudaba la cantidad de $8,482.65 correspondiente al préstamo personal, así como una obligación adicional ascendiente a $4,283.63 relacionada con la tarjeta de crédito. En su escrito de "**Reconsideración**" y en su recurso ante nos, la Cooperativa arguye que correspondía condenar a los Apelados al pago total de $5,159.68 por concepto de costas, gastos y honorarios de abogados, pues el cálculo del 33% se debía efectuar tomando en consideración la cuantía de la deuda al momento de presentar la acción judicial ante el TPI. Es decir,

---

[2] *Véase*, SUMAC-TA, Anejo Núm. 5.

la Cooperativa sostiene que dicho cómputo debió ser desglosado de la siguiente manera: (1) $3,706.49 en el caso del préstamo personal y (2) $1,453.19 en lo correspondiente a la deuda de la tarjeta de crédito. Sostiene, a esos fines, que el foro apelado ignoró la intención de las partes plasmada en los contratos.

Al analizar las disposiciones contractuales aplicables, notamos que solo la contenida en el contrato de préstamo personal es la única que tiene una disposición alusiva al cálculo como propone la Cooperativa. Ello, distinto al caso del contrato de la tarjeta de crédito. Sobre el particular, debemos aclarar que el expediente electrónico de SUMAC está huérfano de evidencia alguna que establezca que al momento de la presentación del pleito, los $11,350.00 efectivamente se adeudaban. **En otras palabras, no existe declaración jurada o prueba alguna que sustente lo alegado**. Los argumentos esgrimidos por la Cooperativa están sustentados en meras alegaciones y no en evidencia que nos ponga en posición de acoger su teoría. La única prueba que consta en los autos del TPI establece que dicha deuda ascendía a los $8,482.65, suma que dicho foro condenó a los Apelados a pagar mediante la *Sentencia* apelada.

Así pues, ante la ausencia de evidencia documental que acredite que la deuda ascendía a $11,231.80 al momento de presentarse la acción y siendo norma reiterada que las alegaciones no constituyen prueba, no podemos coincidir con la Apelante, pues la única evidencia sobre monto alguno adeudado es la declaración jurada que la Cooperativa acompañó a su solicitud de anotación de rebeldía. Lo anterior es cónsono con la capacidad de los tribunales de intervenir en las relaciones contractuales y otorgar remedios en equidad. Coop Sabaneña v. Casiano Rivera, 184 DPR 169, 181 (2011). Esto, pues, en la ponderación de los valores jurídicos en cuestión, se justifica nuestra actuación extraordinaria y resolver a base de la prueba que consta en autos, sin sujeción a meras alegaciones.

En consecuencia, colegimos que la cuantía por concepto de costas, gastos y honorarios de abogado asciende en cuanto al préstamo personal

asciende a $2,799.27, equivalente al 33% de los $8,482.65 sustentados por la prueba documental.

En cuanto al "**Contrato de Venta al Por Menor a Plazos**", el 33% estipulado por costas, gastos y honorarios de abogados debía computarse utilizando los $4,283.63, correspondientes al balance adeudado bajo dicho acuerdo. Reiteramos que en ninguna de sus cláusulas se dispone que ese porcentaje deba determinarse con base en la deuda existente al momento de instarse la acción judicial. El aludido contrato lo que dispone es que el 33% de las costas, gastos y honorarios de abogados se debía computar a base del "balance de la deuda". Nada dispone que debía ser fundamentado en el balance de la deuda al momento de iniciar el pleito. Por tanto, concluimos que la cuantía correcta relacionada con los precitados conceptos equivale a la cantidad de $1,413.60.

Establecido lo anterior, correspondía conceder a la Cooperativa la cuantía global por ambas deudas de $4,212.87 por concepto de costas, gastos y honorarios de abogado, ello conforme a la prueba que obra en autos y no la suma de $3,212.87, consignada en la *Sentencia* apelada. Procede, por consiguiente, modificar el referido dictamen a los únicos efectos de aumentar dicha cuantía y que refleje adecuadamente el monto correspondiente en derecho.

### IV.

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *modifica* la *Sentencia* apelada, a los únicos efectos de corregir la cuantía otorgada por concepto de costas, gastos y honorarios de abogado concedida a $4,212.87, y así *modificada*, se *confirma*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones